<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEMODULATION, INC.,** | **Civil Action No. 11-0296 (WJM)** |
| **Plaintiff,** | |
| **v.** | |
| **APPLIED DNA SCIENCES, INC.** *et. al.*, | **OPINION** |
| **Defendants.** | |

<u>F</u>ALK, U.S.M.J.

Before the Court is the motion of Defendant Alfred University to transfer venue to the Western District of New York pursuant to 28 U.S.C. § 1404(a). <u>See</u> CM/ECF No. 35. The motion is opposed. The Honorable William J. Martini, U.S.D.J., referred the motion to the Undersigned. No oral argument was heard. Fed.R.Civ.P. 78(b). For the reasons that follow, Defendant's motion to transfer is **denied**.

## <u>BACKGROUND</u>

This matter arises from Plaintiff Demodulation, Inc.'s ("Plaintiff") development of a microwire, which has properties that allow for covert tracking, similar to radar. <u>See</u> CM/ECF No. 34 at ¶¶ 9 - 15. Microwire is designed for use in homeland security, national defense, article tracking and authentication, and the energy industry. <u>Id.</u> In an effort to advance development of the microwire, Plaintiff entered into a series of contracts with Alfred University ("Alfred"), Corning Incorporated ("Corning"), Alfred Technology Resources, Inc. ("ATRI"), and Applied DNA Sciences,

Inc. ("ADNAS") (collectively "Defendants")[1]. According to Plaintiff, the parties executed written

non-disclosure agreements to protect the intellectual property and trade secrets of the microwire

technology. Plaintiff's non-disclosure agreement with Corning contained a New Jersey forum

selection and choice of law clause which states, in pertinent part:

> This agreement shall be governed and construed in accordance with the laws of the
> United States and the State of New Jersey and the Recipient [Corning] consents to
> the exclusive jurisdiction of the state courts and U.S. federal courts located there for
> any dispute arising from this Agreement.

See CM/ECF No. 38-1, Ex. J.

On August 3, 2011, Plaintiff invoked the Court's diversity jurisdiction and filed an Amended

Complaint against Defendants, asserting a myriad of claims predicated on the general theory that

Defendants conspired to steal Plaintiff's trade secrets and to otherwise interfere with Plaintiff's

business opportunities.[2] See CM/ECF No. 34. On September 9, 2011, Alfred filed a motion to

transfer this case to the Western District of New York ("W.D.N.Y."), arguing it is a more convenient

forum. By letter, Corning joined in Alfred's motion to transfer. See CM/ECF No. 28. Plaintiff and

Defendant ADNAS oppose transfer. They assert that the New Jersey forum selection clause

---

[1] Plaintiff is a Delaware corporation with its principal place of business in New Jersey. See CM/ECF No 34 at ¶ 1. ADNAS is a Nevada corporation with its principal place of business in Stony Brook, New York. Id. at ¶ 3. Corning is a New York corporation with its principal place of business in Corning, New York. Id. at ¶ 4. Alfred is a private university organized under the laws of the State of New York, with its principal place of business in Alfred, New York. Id. at ¶ 5. ATRI is a New York non-profit corporation with its principal place of business in Alfred, New York. Id. at ¶ 6.

[2] Plaintiff alleges 17 causes of action, including: violations of state and federal civil RICO laws, state and federal antitrust violations, breach of contract, piercing the corporate veil, trade libel, misappropriation of trade secrets, unfair competition/tortious interference with prospective business relations, violations of New York General Business Law, civil rights violations pursuant to 42 U.S.C. § 1983, patent infringement, fraud, unjust enrichment, and breach of fiduciary duty. See CM/ECF No. 34 at ¶¶ 50 - 154.

exclusively mandates a New Jersey forum, and, that the relevant public and private interests weigh against transfer. See CM/ECF Nos. 38, 39.

## DISCUSSION

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses. . . .'" Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). The Court is "vested with a large discretion" when deciding whether to transfer a case. Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1973).

The moving party bears the burden of establishing (1) that the proposed transferee forum is one in which the case "might have been brought" and (2) that in the interest of justice the proposed transferee forum is more convenient for parties and witnesses. See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc., 309 F.Supp.2d 637, 643 (D.N.J. 2004) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

### A.    FORUM SELECTION CLAUSE

Forum selection clauses are presumptively valid and should be enforced "unless the resisting party makes a 'strong showing' that the clause is 'unreasonable.'" Cadapult Graphic Systems, Inc. v. Tektronix, Inc., 98 F.Supp.2d 560, 564 (D.N.J. 2000) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). In this Circuit, forum selection clauses are entitled to "great weight." Wall Street Aubrey Golf, LLC v. Aubrey, 189 Fed.Appx. 82, 85 (3d Cir. 2006).

3

It is undisputed that the New Jersey forum selection clause is valid. Indeed, there are no arguments that the clause is tainted in any way. See M/S Bremen, 407 U.S. at 12-13 (stating a forum selection clause is valid unless there is a showing of fraud, undue influence or overweening bargaining power).

In a transfer analysis "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara, 55 F.3d at 880. Accordingly, the parties agreement to the most proper forum is entitled to powerful consideration. Id. In fact,

> [w]hen a plaintiff has selected a forum that is also the forum called for by a valid forum selection clause, the host of private and public considerations that courts ordinarily take into account when ruling on § 1404(a) motions must be extraordinarily compelling in favor of transfer to result in transfer.

Canon Financial Services, Inc. v. GR Graphics, Inc., No. 10-3946, 2011 WL 734860 (D.N.J. Feb. 18, 2011) (internal citations omitted).

In this case, the transfer opponents contend that the forum selection clause precludes this case from having been brought in the W.D.N.Y., a prerequisite to transfer. Jumara, 55 F.3d at 879. Alfred counters that the New Jersey forum selection clause is not deserving of considerable weight because (1) it only gives rise to one claim out of seventeen in this matter, and (2) the clause itself is "vaguely worded." See CM/ECF No. 41 at 2 - 5. Neither argument has merit.

While it is true that the complaint is expansive in alleging causes of action, the guts of the claim are conspiracy to steal and exploit Plaintiff's trade secrets. This is precisely what the non-disclosure agreement containing the New Jersey forum selection clause meant to prevent. In addition, Plaintiff persuasively argues its complaint consists of allegations that Defendants acted in concert, and these counts must have been filed against all Defendants in one pleading, in one forum. For

4

example, Plaintiff alleges that Defendants Corning, Alfred, ATRI, and ADNAS (which opposes transfer), collectively engaged a conspiracy to misappropriate Plaintiff's intellectual property and trade secrets. See CM/ECF No. 34 at ¶¶ 50 - 58.

Given the New Jersey forum selection clause, Plaintiff (and ADNAS) explain that by joining Corning, Plaintiff could only file its complaint in New Jersey. See CM/ECF No. 38 at 5. This makes sense, especially since the allegations appear to be inextricably intertwined.[3] See Four River Exploration LLC v. Bird Resources, Inc., No. 09-3185, 2010 WL 216369, *3 (D.N.J. Jan. 15, 2010) ("Courts in this Circuit have consistently held that non-signatory third-parties who are 'closely related to [a] contractual relationship' are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationships.") (quoting Foley & Lewis Racing, Inc. v. Burling, No. 07-972, 2008 WL 544655, *3 (D.N.J. Feb. 27, 2008)); see also Affiliated Mortg. Protection, LLC v. Tareen, 2007 WL 203947, *3 (D.N.J. Jan. 24, 2007).

Here, the confidentiality agreement containing the New Jersey forum selection clause logically ties together portions of Plaintiff's claims against Defendants. See Cinema Laser Tech. Inc. v. Hampson, No. 91-1018, 1991 WL 90913 (D.N.J. May 30, 1991) (applying forum selection clause

---

[3]Alfred cites one case, Dorsey v. Northern Life Ins. Co., 2005 WL 78937, *5 (E.D.La. Jan. 11, 2005), in support of its position that a clause between two parties should have no bearing on other claims. Dorsey is inapposite. There, the Court, in an unpublished opinion, determined that it was inappropriate to allow the forum selection clause to drive the Court's analysis because there was no "evidence of any connection between the contractually selected forum and the underlying claims,"and enforcement of the clause would require Defendants to "litigate identical claims in two separate fora." Id. at *5. This is not so in the present case, in which there are strong ties to New Jersey. Not only is Plaintiff a New Jersey resident, some of Plaintiff's claims arise under New Jersey law. Also, since the claims are intimately related, litigating all claims in New Jersey avoids duplicative litigation in multiple fora–the opposite of Dorsey.

to all claims in a suit where one document connected all defendants); <u>see also</u> <u>Crescent Int'l, Inc. v.</u> <u>Avatar Communities, Inc.</u>, 857 F.2d 943 (3d Cir. 1988).

Likewise, Alfred's argument that the New Jersey forum selection is "vaguely worded" is a non-starter. In fact, it is clear on its face. The clause reflects an agreement by the parties to submit to the jurisdiction of either a New Jersey state court, or a federal court located in New Jersey.[4] By explicitly consenting to a state or federal court located "there" (i.e., New Jersey), venue is identified.[5]

In sum, there is a valid, enforceable New Jersey forum selection clause that effectively precludes this case from having been brought in the W.D.N.Y. Thus, transfer there is inappropriate.

**B.    TRANSFER IS NOT OTHERWISE WARRANTED**

Even if Plaintiff could have brought this case in the W.D.N.Y., consideration of the relevant private and public interests weigh against transfer. The private interests include: (1) preferences of the parties; (2) where the claim arose; (3) the convenience of the parties; (4) the convenience and availability of witnesses; and (5) the location of books and records. <u>See</u> <u>Jumara</u>, 55 F.3d at 879. The public interests include: (1) enforceability of the Court's judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the level of congestion in the respective

---

[4] This is further clarified by Plaintiff's CEO, James O'Keefe, Jr., who stated "Demod always intended to maintain a presence in New Jersey and always did so. These are the reasons why the agreement identifies New Jersey as the source of law governing this dispute and the location for any legal action." <u>See</u> CM/ECF No. 38-1 at ¶ 7.

[5] Relying on <u>Umoe Schat Harding, Inc. v. New York Marine and General Ins. Co.</u>, No. 10-3722, 2011 WL 1211462 (D.N.J. Mar. 29, 2011), Alfred asserts the forum selection clause does not contain the word venue and thus the clause is anchored in jurisdiction, which is a different concept. <u>See</u> CM/ECF No. 41 at 4. <u>Umoe Schat</u> is distinguishable. There, the agreement at issue involved a service of suit clause which is different than a forum selection clause. <u>See</u> <u>Umoe Schat</u>, 2011 WL 1211462 at *3.

forums; (4) the local interest in deciding local controversies at home; (5) the public policies of the forum; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id.

Here, none of the private interests favor transfer. The preferences of the parties weigh against transfer. At the outset, Plaintiff's choice of forum is entitled to deference. See Tech. Dev. Co. v. Onischenko, 174 Fed. Appx. 117, 120 (3d Cir. 2006). Of the five parties to this litigation, two – Plaintiff and ADNAS – oppose transfer. Of the two supporting transfer – Corning and Alfred – Corning contracted to litigate in New Jersey and so its current preference is of no moment. ATRI has not stated its position one way or the other. Thus, only Alfred strongly argues for transfer. However, Alfred's arguments are generic and unconvincing. For example, Alfred does not argue that any witnesses would be unavailable, but rather, its "executives and employees" who are likely witnesses and most knowledgeable about this case, are located in New York. See CM/ECF No. 35-1 at 9. Although New York is more convenient for these witnesses, their inconvenience carries less weight because as party witnesses, they are presumed to be willing to testify in either forum. See Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F.Supp.2d 518, 534 n. 19 (D.N.J. 2000). Alfred does not argue that any documentary evidence will be unavailable in New Jersey, nor has it identified any third-party witnesses who would be unavailable by the Court's compulsory process.

By comparison, Plaintiff asserts genuine inconvenience if forced to litigate in New York primarily because it cannot afford to do so. See CM/ECF No. 38 at 6. In fact, Plaintiff's CEO, James O'Keefe, Jr., states that a trial in the W.D.N.Y. would represent a severe financial burden to the company, so much so that it would be unable to pay for a hotel room there. See CM/ECF No. 38-1 at ¶ 8. ADNAS also argues that as a Delaware corporation, with offices in Long Island, New Jersey is more convenient. See CM/ECF No. 39. On balance, the private interests weigh against transfer.

The public interests do not favor transfer either. Alfred identifies the applicability of New York law and New York's interest in regulating the conduct of business in-state as favoring transfer. However, many of the claims arise under New Jersey law, and it is undisputed that New Jersey law applies to Plaintiff's claims against Corning due to the choice of law provision. See CM/ECF No. 37. In addition, Plaintiff is located in New Jersey and New Jersey has just as much interest in regulating business here as does New York. This significant public policy interest, coupled with the deference afforded to Plaintiff's choice of forum, weighs against transfer.

**C.**      **Summary**

In sum, Plaintiff's decision to bring suit in New Jersey, as required by the binding New Jersey forum selection clause, is a compelling reason to deny transfer. However, even without the New Jersey forum selection clause, consideration of the private and public interests does not support transfer. Not only do the preferences of the parties weigh against transfer, New Jersey's interest in providing a forum for its own resident favors litigating in New Jersey.

**CONCLUSION**

For the reasons stated above, Defendant Alfred University's motion to transfer is **denied**. An appropriate Order accompanies this Opinion.


**Dated:**      **December 22, 2011**



                                        s/ Mark Falk
                                        **MARK FALK**
                                        **United States Magistrate Judge**

8