## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**DEMODULATION, INC.,**

        **Plaintiff,**

    v.

**APPLIED DNA SCIENCES, INC.,** *et al.*,

        **Defendants.**

Civ. No. 2:11-cv-00296 (WJM)

**OPINION**

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Demodulation, Inc. ("Demod") brings this action against four Defendants: (1) Corning Inc. ("Corning"); (2) Alfred University (the "University"); (3) Alfred Technology Resources, Inc. ("ATRI"); and (4) Applied DNA Sciences, Inc. ("Applied DNA"). All four Defendants have filed motions to dismiss. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, all four motions are **GRANTED** in part, and **DENIED** in part.

### I.       BACKGROUND

The following facts are drawn from the Amended Complaint.[1] Plaintiff Demod is a technology start-up company with its principal place of business in Westwood, New Jersey. First Amended Complaint ("FAC" or "Amended Complaint") ¶ 1, ECF No. 34. Defendant Applied DNA is a competing technology start-up company with its principal place of business in Stony Brook, New York. *Id.* ¶ 3. Peter Brocklesby was the former CEO of Applied DNA. *Id.* ¶ 41. He was replaced by Dr. James Hayward. *Id.* ¶ 29. Defendant Corning is a corporation with its principal place of business in Corning, New York. *Id.* ¶ 4. Defendant University is a private university located in Alfred, New York. *Id.* ¶ 5. Defendant ATRI is a non-profit joint venture between Corning and the University with its principal place of business in Alfred, New York. *Id.* ¶¶ 6, 20-21.

---

[1] Plaintiff's 17-Count Amended Complaint is not a model of focus or clarity, and many of the allegations appear to be out of chronological order. The following summary represents the Court's best attempt to summarize the allegations.

Robert Ecklin was an Executive Vice President at Corning and the President of ATRI. *Id.* ¶ 19.

ATRI and the University own and operate the Ceramics Corridor Innovation Center (the "CCIC"), a business incubator that helps start-up companies develop and market emerging ceramics-related technology.  *Id.*  ¶¶ 19-20.  The CCIC was established with the help of grants from the New York State government.  *Id.*  The CCIC advertises that companies "under its care" can take advantage of services, including "intellectual property management," "investor/strategic partner linkages," "international trade assistance," and "technology commercialization."  *Id.* ¶ 20.

Demod owned certain patents and other intellectual property related to an amorphous glass-coated metal microwire.  FAC ¶ 9.  Microwire is a high-tech hair-like fiber with a unique signature that can be encoded and modified.  *Id.*  ¶¶ 13-15.  Microwire is practically invisible, but the signal from a small strand of microwire can be detected from several kilometers away, even if no power source is connected to the microwire.  *Id.*  The properties of the microwire change based on changes in temperature and pressure, and biological and chemical conditions.  *Id.*  ¶ 15.  Demod's patents concern, among other things, several specific methods and systems for manufacturing and engineering microwire, and detecting and reading the signal produced by microwire at both short and long distances.  *Id.*  ¶ 14.  The U.S. Department of Energy conducted an evaluation of Demod's microwire technology and concluded that it had myriad applications for homeland security, national defense, article tracking and authentication, and the energy industry.  *Id.*  ¶ 15.

In 2003, Demod entered into an agreement with the University to commercialize its microwire.  FAC ¶ 17.  Pursuant to this agreement, the University was granted a one percent (1%) royalty on all gross revenue recognized from the eventual sale of microwire products, in exchange for the University's efforts to obtain state and federal funding for the research and development of the microwire technology.  *Id.*  At the time the parties entered the agreement, experts at the University determined that the annual market for microwire products was likely to be between $250,000,000 and $2,000,000,000.  *Id.*  ¶ 18.  As part of its agreement with Demod, the University invited Demod to become a tenant of the CCIC.  FAC ¶ 19.  Demod accepted this offer and moved into the CCIC in 2003.  *Id.*  ¶ 21.  Demod executed written non-disclosure agreements ("NDAs") with the University, ATRI, and Corning to protect its trade secrets relating to the microwire.  *Id.*  ¶ 22.  Demod "revealed extensive trade secrets to these defendants."  *Id.*

Demod alleges that the University, ATRI, and Corning failed to disclose various conflicts of interest while Demod was at the CCIC.  FAC ¶ 23.  Demod identifies four conflicts specifically.  First, Demod alleges that Mr. Ecklin, the Corning and ATRI executive, was on the Board of Directors of the SUNY Research Foundation (the "Foundation") with Dr. Hayward, the CEO of Demod's competitor Applied DNA.  *Id.* ¶ 44.  Second, Demod alleges that Corning had an undisclosed $57,000,000 venture with Elbit Systems, Ltd. ("Elbit"), a large Israeli defense contractor.  *Id.*  ¶¶ 23, 24.  Elbit's

subsidiary, Advanced Coding Systems ("ACS"), was producing "glass coated amorphous magnetic MicroWires" in Israel.  *Id.*  ¶ 23.  Third, Corning allegedly paid $800,000,000 to acquire Intellisense, a company that produced devices that could be used in wireless sensors.  *Id.* ¶ 25.   Fourth, Corning and the University allegedly formed the Center for Excellence in Photonics ("Infotonics"), a business incubator like the CCIC, to develop applications for remote micro-sensors.  *Id.* at 26.

Demod alleges that Defendants intentionally "blackball[ed]" Demod in order to protect their conflicting interests.  FAC ¶ 38.  Demod identifies five specific examples.  First, Demod alleges that Corning provided Applied DNA with proprietary information concerning the characteristics and specifications of Demod's microwire, and its methods for encoding and detecting microwire.  *Id.* ¶ 29.  Second, Demod alleges that Mr. Ecklin and Dr. Hayward used their positions at the Foundation to ensure that grants from the Foundation and "similar New York State entities" went to Applied DNA instead of Demod.  *Id.* ¶¶ 29, 44.  Third, Demod alleges that Mr. Ecklin publicly made false statements concerning Demod's technology, telling various government officials that it was "insignificant and not deserving of investment," and that Demod had stolen the technology from Corning.  *Id.* ¶¶ 30-33.  Fourth, Demod alleges that, after it began negotiations with a company called In-Q-Tel, a Corning executive who was on the Board at In-Q-Tel directed In-Q-Tel to deny Demod funding.  *Id.* ¶ 36.  Finally, Demod alleges that it provided confidential information to the Empire State Development Corporation ("ESDC") to seek research funding, but was not told that the Chairman of the ESDC was a shareholder of Applied DNA.  *Id.* ¶ 37.

Demod alleges that, while it was being harmed, Applied DNA was benefiting from Defendants' misconduct.  Applied DNA received large amounts of funding from the Foundation, and secured military contracts for its products.  *Id.* ¶ 39.  Applied DNA also formed a business relationship with ACS to acquire ACS's microwire product.  *Id.* ¶ 40.  In response to a press release announcing the joint venture between Applied DNA and ACS, Demod contacted Applied DNA's then-CEO, Mr. Brocklesby.  FAC ¶¶ 40-41.  Demod asked Mr. Brocklesby how Applied DNA came into contact with ACS.  *Id.*  Mr. Brocklesby responded that he was "directed" to ACS by "an individual from New York."  *Id.* ¶ 41.  Demod notified Mr. Brocklesby that the Applied DNA-ACS venture would likely infringe Demod's patents.  *Id.*  ¶¶ 40-42.  Mr. Brocklesby responded by telling Demod that Applied DNA had terminated its relationship with ACS.  *Id.* ¶ 42. Shortly thereafter, Mr. Brocklesby was replaced by Mr. Hayward, and Applied DNA continued its relationship with ACS.  *Id.* ¶ 44.  In late 2006 or 2007, Applied DNA made a proposal to the Far East Empire Group in which Applied DNA represented that it produced "DNA Embedded Amorphous Micro Wire security products."  *Id.*  ¶ 43.

Demod's tenancy at the CCIC was terminated in 2008.  FAC ¶¶ 91, 57(b).  Demod alleges that it suffered damages as a result of Defendants' misconduct, including the loss of a lucrative contract with Family Dollar and the loss of the capital it used to pursue funding and business relationships.  *Id.* ¶¶ 47-48.  In addition, without any funding or investment, Demod was unable to pay the fees to maintain some of its patents.  *Id.* ¶ 49.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Iqbal*, 129 S.Ct. at 1949 (2009).

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America,* 361 F.3d 217, 223-224 (3d Cir.2004)) (internal quotation marks omitted).  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.  *Id.*

## III.    DISCUSSION

Demod asserts seventeen causes of action in its Amended Complaint:

(1) Count 1 – NJ Civil RICO (NJSA 2C:41-2(c)) against all Defendants;
(2) Count 2 – NJ RICO Conspiracy (NJSA 2C:41-2(d)) against all Defendants;
(3) Count 3 – Federal Civil RICO against Corning and the University;
(4) Count 4 – State and Federal Antitrust Violations against all Defendants;
(5) Count 5 – Breach of Contract against the University;
(6) Count 6 – Piercing the Corporate Veil against the University and Corning;
(7) Count 7 – Breach of Contract against ATRI;

(8) Count 8 – Breach of Contract against Corning;
(9) Count 9 – Trade Libel against Corning;
(10) Count 10 – Misappropriation of Trade Secrets against all Defendants;
(11) Count 11 – Unfair Competition against Corning, the University, and ATRI;
(12) Count 12 –NY General Business Law Violations against ATRI;
(13) Count 13 – Section 1983 Violations against ATRI;
(14) Count 14 – Patent Infringement against Applied DNA;
(15) Count 15 – Fraud against the University, Corning, and ATRI;
(16) Count 16 – Unjust Enrichment against the University; and
(17) Count 17 – Breach of Fiduciary Duty against ATRI.

Defendants have moved to dismiss every Count except for Count 5 (Breach of Contract against the University). The University has also requested that the Court strike the deposition transcript attached to Demod's brief, along with the brief itself. The Court will address the request to strike, and will then address each Count in turn.

## A.  The University's Request to Strike the Goldstein Deposition

Demod attached to its opposition brief a 36-page transcript for the "Deposition of Alan Goldstein." ECF No. 57-3. The University argues that Demod took the Goldstein deposition in violation of the Federal Rules, and that the Court should strike the deposition and Demod's brief as a sanction.

The Court finds that the Goldstein deposition was taken in violation of the Federal Rules. Demod took this deposition before discovery began, without notice to any of the other parties, and without the presence of any attorneys for Defendants. This was a violation of Federal Rules of Civil Procedure 30(b)(1) and 26(d)(1). In addition, Mr. Goldstein was subject to a confidentiality agreement with the University, and the University had previously denied a request from Demod's counsel for permission to speak with him. As a sanction for these violations, the Court will strike the Goldstein deposition. The Court will not strike Demod's opposition brief. However, the Court cautions Plaintiff's counsel that any further violations of the Federal Rules will result in the imposition of more serious sanctions.

## B.  Counts 1 and 2 – NJ Civil RICO Claims against All Defendants

In Counts 1 and 2, Plaintiff asserts claims for violations of the New Jersey Civil RICO statute (N.J.S.A. 2C:41-2(c)) and the New Jersey Civil RICO conspiracy statute (N.J.S.A. 2C:41-2(d)) against all Defendants. All four Defendants have moved to dismiss. The Court finds that the motions to dismiss Counts 1 and 2 should be granted.

New Jersey RICO, which is targeted to "organized crime and organized crime type activities," N.J.S.A. § 2C:41-1.1, makes it unlawful for anyone associated with an enterprise engaged in or associated with commerce to participate in the conduct of the enterprise through a pattern of racketeering activity. N.J.S.A. § 2C:41-2(c). To establish

an entitlement to relief for a violation of N.J. RICO, a plaintiff must prove: 1) the existence of an enterprise; 2) engaged in or conducting activities affecting commerce; 3) in which the defendant was associated; 4) and engaged in the conduct of the enterprise's affairs; and 5) that defendant's participation in the conduct of the enterprise was done through a pattern of racketeering activity. *Ford Motor Co. v. Edgewood Prop., Inc.*, No. 06-1278, 2009 U.S. Dist. LEXIS 4172, at *38 (D.N.J. 2009). In addition, a plaintiff must allege that it was injured as a result of the violation. *Maxim Sewerage Corp. v. Monmouth Ridings*, 273 N.J. Super. 84, 94 (Law. Div. 1993); N.J.S.A. § 2C:41-4(c).

In this case, Plaintiff alleges that there were two enterprises: (1) the "ADNAS Enterprise," which involved all four Defendants; and (2) the "CCIC Enterprise," which involved Corning, the University, and ATRI. FAC ¶ 52. Plaintiff alleges that the goal of the enterprise was to "unlawfully capture and control emerging technologies like Demod's and the funding of those technologies for [Defendants'] own direct or indirect benefit." FAC ¶ 56. Plaintiff alleges that Defendants committed a total of eleven predicate acts in furtherance of the pattern of racketeering activity, including economic espionage (18 U.S.C. § 1831) and mail and wire fraud (18 U.S.C. §§ 1341, 1343, 1346).

Plaintiff has failed to state a claim for N.J. RICO because Plaintiff failed to properly allege the existence of an enterprise. In determining whether a group has the "high degree of planning, cooperation and coordination" necessary to constitute an enterprise, courts look at many factors, including how the group is structured, "how the participants associated with each other, whether the participants each performed discrete roles in carrying out the scheme, the level of planning involved, how decisions were made, [and] the coordination involved in implementing decisions." *State v. Ball*, 141 N.J. 142, 162-63 (1995). In this case, Plaintiff did not even allege facts suggesting that Defendants worked together as a group, let alone that the group had a structure or made plans or coordinated any activities. Further, Plaintiff asserts that there are two enterprises, but does not explain what each enterprise did or how they are distinct.[2]

Accordingly, the motions to dismiss Counts 1 and 2 are **GRANTED**, and both Counts are **DISMISSED WITHOUT PREJUDICE**.[3]

---

[2] Further, many of the predicate acts listed in the Amended Complaint are improperly pled. For example, Plaintiff alleges that Defendants violated 18 U.S.C. § 1831, an economic espionage statute that punishes those who leak trade secrets to a foreign government, but Plaintiff fails to allege the involvement of any foreign government.

[3] Throughout the motions to dismiss, Defendants argue that Plaintiff's claims are time-barred by the applicable statute of limitations. For example, Defendants argue that the N.J. RICO claims are time-barred by New Jersey's four-year statute of limitations. Unfortunately, the Amended Complaint is a morass of disjointed vignettes with no clear chronology and very few dates, so the Court is unable to make statute of limitations determinations at this time. *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint

### C.  Count 3 – Federal Civil RICO Claim against Corning and the University

In Count 3, Plaintiff asserts a claim for Federal Civil RICO under 18 U.S.C. § 1962(c) against Corning and the University.  Both Defendants move to dismiss.  The Court finds that the motions to dismiss Count 3 should be granted.

RICO makes it unlawful for "any person employed by or associated with any enterprise … to participate … in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). In order to state a violation of Section 1962(c), a plaintiff must show 1) an enterprise affecting interstate commerce, 2) in which the defendant was associated, 3) and in the conduct or affairs of which the defendant participated, 4) through a pattern of racketeering activities.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010).  To establish a pattern of racketeering, a plaintiff must show that each defendant committed at least two predicate acts of racketeering from the list of acts set forth in 18 U.S.C. § 1961.  18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  Plaintiff must also demonstrate that it suffered harm as a proximate result of the alleged RICO activity.

In this case, Plaintiff failed to state a claim for a Federal RICO violation.  Plaintiff alleges that Corning and the University operated the CCIC as a RICO enterprise.  However, Plaintiff fails to allege any racketeering activity.  Plaintiff does not specify the predicate acts upon which its Federal RICO claim is based, except to say that Defendants committed wire fraud by listing Plaintiff as a CCIC graduate on the CCIC website.  Plaintiff fails to explain how listing it as a graduate constitutes wire fraud.  Even if it were wire fraud, it would only constitute one predicate act.  Further, Plaintiff fails to explain how this website listing proximately caused it any injury.

Accordingly, the motions to dismiss Count 3 are **GRANTED**, and Count 3 is **DISMISSED WITHOUT PREJUDICE**.

### D.  Count 4 – State and Federal Antitrust Violations against All Defendants

In Count 4, Plaintiff asserts a claim against all Defendants for violations of Section 1 of the Sherman Act and New Jersey's parallel antitrust statute, N.J.S.A. § 56:9-3.  All four Defendants have moved to dismiss.  The Court finds that the motions to dismiss Count 4 should be granted for at least two reasons.

First, Plaintiff has failed to adequately allege an agreement on the part of Defendants to restrain interstate commerce.  In order to establish a Section 1 violation, a plaintiff must establish the existence of an illegal agreement and a resulting injury to

---

under Rule 12(b)(6)").  Defendants may re-raise their statute of limitations arguments later in the litigation.

commerce.  *See* 15 U.S.C. § 1; *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010).  To plead such an illegal agreement, a plaintiff may allege direct evidence, circumstantial evidence, or a combination thereof.  *Id.* at 99.  In this case, Plaintiff fails to plead facts suggesting that the four Defendants had come to any sort of agreement to restrain trade or boycott Plaintiff.  Plaintiff's allegations are therefore insufficient to state an antitrust claim.  *See Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011).

Second, the Amended Complaint contains no allegations concerning the relevant market, an essential component of any antitrust claim.  *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).  The boundaries of the relevant product market are drawn by establishing a "reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Id.* at 436.  While the Amended Complaint references microwire and states that Defendants are Plaintiff's competitors, it does not include any allegations regarding the relevant market size, geographical location, or what would constitute interchangeable substitute products.  Thus, Plaintiff has failed to state a claim.

Accordingly, the motions to dismiss Count 4 are **GRANTED**, and Count 4 is **DISMISSED WITHOUT PREJUDICE**.

### E.  Count 6 – Piercing the Corporate Veil against the University and Corning

In Count 6, Plaintiff asserts that the Court should pierce the corporate veil and hold Corning and the University liable for ATRI's conduct.  Corning and the University move to dismiss.  The Court finds that the motions to dismiss Count 6 should be granted.

New York courts[4] typically decline to pierce the corporate veil absent extraordinary circumstances.  *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, Inc., 98 F.3d 13, 17 (2d Cir. 1996) (noting that "New York courts disregard corporate form reluctantly").  To justify piercing the corporate veil, a plaintiff must show that 1) the owner of the corporate entity dominated the corporation such that the corporation has become a mere instrumentality of its owner; and 2) the owner used its domination of the entity to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury.  *Matter of Morris v. N.Y. State Dep't of Taxation and Fin.*, 603 N.Y.S.2d 807, 810-11 (1993); *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997).  With regard to the first element of the test, New York courts consider a number of factors to determine whether the requisite degree of domination is present, including the absence of corporate formalities such as the election of directors; intermingling funds; overlap in officers, directors, and personnel; common office space;

---

[4] Defendants assert that New York law applies to this claim.  Plaintiff does not dispute that New York law applies.  Thus, the Court will apply New York law.

and the arm's lengths dealings between the owner and the corporate entity. *Wm. Passalacqua Builders v. Resnick Developers*, 933 F.2d 131, 139 (2d Cir. 1991).

In this case, the allegations in the Amended Complaint are insufficient to satisfy the domination prong of the veil piercing test. With the exception of a single allegation that "Employees of both Corning and [the University] simultaneously served as the management of ATRI," FAC ¶ 98, Plaintiff does not allege any facts to establish the absence of corporate formalities or the existence of any of the other *Passalacqua* factors. That one allegation, without more, cannot support a claim for piercing the corporate veil.[5] *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, at 426-27 (S.D.N.Y. 2003); *Goldman v. Chapman*, 844 N.Y.S.2d 126, 127-28 (2d Dep't 2007).

Accordingly, the motions to dismiss Count 6 are **GRANTED**, and Count 6 is **DISMISSED WITHOUT PREJUDICE**.

### F.  Count 7 – Breach of Contract against ATRI

In Count 7, Plaintiff asserts a claim for breach of contract against ATRI. ATRI moves to dismiss. The Court finds that the motion to dismiss Count 7 should be granted.

Under New York[6] law, a complaint for breach of contract must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). A "court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to… If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *166 Mamaroneck Ave. Corp. v. 151 East Post Road Corp.*, 571 N.Y.S.2d 686, 687 (1991).

In this case, Plaintiff fails to allege the most basic of the four requirements: the existence of an agreement. The Amended Complaint does not identify any contract between the parties: not a lease, or a partnership agreement, or even an oral contract. Instead, the Amended Complaint simply quotes various CCIC advertising materials, and then states that the advertised services were not provided to Plaintiff. *See* FAC ¶¶ 20-21. The Amended Complaint also fails to identify when the alleged agreement was entered into, what the terms of the agreement were, how long the agreement was to last, and what consideration was provided by each party. Plaintiff has therefore failed to state a claim

---

[5] Plaintiff attaches advertising and financial documents to its opposition brief, and makes new allegations regarding the overlap in the entities' officers and directors. However, these allegations were not included in the Amended Complaint, and these documents are not properly considered on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (A district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings).

[6] Plaintiff concedes that New York law applies to Count 7. Pl.'s Opp Br. at 26.

for breach of contract.  *See Chrysler Capital Corp. v. Hilltop Egg Farms Inc.*, 514 N.Y.S.2d 1002, 1003 (3d Dept. 1987).

Accordingly, the motion to dismiss Count 7 is **GRANTED**, and Count 7 is **DISMISSED WITHOUT PREJUDICE**.

### G.  Count 8 – Breach of Contract against Corning

In Count 8, Plaintiff asserts a claim for breach of contract against Corning. Corning moves to dismiss.  The Court finds that the motion to dismiss Count 8 should be denied.

To plead a breach of contract claim under New Jersey[7] law, a plaintiff must allege that (1) there was a contract; (2) that contract was breached; (3) the breach resulted in damages; and (4) the person suing for breach performed his own contractual duties.  *See Cotter v. Newark Housing Auth.*, 422 Fed. App'x. 95, 98 (3d Cir. 2011).  In this case, Plaintiff alleges that it entered into an NDA with Corning, Corning breached the NDA by sharing Plaintiff's confidential information with other entities (including Applied DNA), and Plaintiff was damaged when its trade secrets were leaked to a competitor.  *See* FAC ¶¶ 109-115.  Thus, Plaintiff has stated a breach of contract claim against Corning.[8]

Corning argues that Plaintiff's claim is barred by New Jersey's six-year statute of limitations for breach of contract actions.  N.J.S.A. § 2A:14-1.  In support of its argument, Corning attached a series of documents to its motion, including a January 9, 2005 letter from Plaintiff to Corning, raising concerns that Corning had breached the NDA.  However, it is well-settled that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994) ("Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss[; the only] exception is [if] the complaint facially shows noncompliance with the limitations period"); 5A Wright and Miller, Federal Practice and Procedure: Civil 2d, § 1357.  Corning's statute of limitations argument is based entirely on documents that are not properly considered on a motion to dismiss.

Accordingly, the motion to dismiss Count 8 is **DENIED**.

---

[7] The parties agree that New Jersey law governs this claim because the NDA between Plaintiff and Corning includes a New Jersey choice of law provision.

[8] It is unclear if Plaintiff is alleging the breach of an additional contract with Corning.  *Compare* FAC ¶ 109 ("Demod entered one or more contracts with Corning") *with* FAC ¶¶ 110-112 (stating that Corning "breached the contract").  If Plaintiff is alleging the breach of a contract other than the NDA, that claim is dismissed without prejudice for failure to identify the contract.

### H.  Count 9 – Trade Libel against Corning

In Count 9, Plaintiff asserts a claim for trade libel against Corning.  Corning moves to dismiss.  The Court finds that the motion to dismiss Count 9 should be granted.

To state a claim for trade libel under New York[9] law, a plaintiff must allege that the defendant: 1) published an oral defamatory statement concerning the quality of another's goods; 2) to a third party; 3) with malice; 4) resulting in special damages to the plaintiff. *Alt. Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322, 336-37 (E.D.N.Y. 2009).  "[S]pecial damages must be fully and accurately stated, with sufficient particularity to identify actual losses."  *MapInfo Corp. v. Spatial Re-Engineering Consultants*, No. 02-1008, 2006 WL 2811816, at *13 (N.D.N.Y Sept. 28, 2006); *see also Alt. Electrodes*, 597 F. Supp. 2d at 337-38 (dismissing trade libel claim because plaintiff failed to itemize special damages).

In this case, Plaintiff fails to state a claim for trade libel.  In Count 9 of the Amended Complaint, Plaintiff states that its libel claim is based on "statements described above," made by Corning representatives.  FAC ¶¶ 117-121.  However, the only "statement[] described above" that maligned the quality of Plaintiff's goods is a comment, allegedly made by Mr. Ecklin, that Plaintiff's technology was "insignificant and not deserving of investment."  FAC ¶ 30.  Plaintiff fails to tie this comment to any actual loss.  In addition, Plaintiff does not even attempt to itemize its special damages.

Accordingly, the motion to dismiss Count 9 is **GRANTED**, and Count 9 is **DISMISSED WITHOUT PREJUDICE**.

### I.  Count 10 – Misappropriation of Trade Secrets against all Defendants

In Count 10, Plaintiff asserts a claim for misappropriation of trade secrets against all Defendants.  All four Defendants move to dismiss.  The Court finds that Corning, the University, and ATRI's motions to dismiss Count 10 should be denied, and Applied DNA's motion should be granted.

The Court must first determine whether New York or New Jersey law applies to the misappropriation claim.  The parties raised the choice of law issue, but did not brief the issue or take a position on which state's law applies.  Under the first step of New Jersey's two-step "most significant relationship" test, the Court finds that an actual conflict exists between New York and New Jersey law.  *See P.V. v. Camp Jaycee,* 197 N.J. 132, 142-43 (2008).  A New Jersey plaintiff must allege six factors to state a claim for misappropriation, while a New York plaintiff need only allege two.  *Compare Rycoline Prod., Inc. v. Walsh*, 334 N.J. Super. 62, 71 (App. Div. 2000) *with Novus Partners, Inc. v. Vainchenker*, 938 N.Y.S.2d 228 (Sup. Ct. N.Y. 2011).  Under the second

---

[9] Corning asserts that New York law applies to this claim.  Plaintiff does not dispute that New York law applies.  Thus, the Court will apply New York law.

step, the Court finds that New York has the most significant relationship to the claim. The Defendants and the CCIC are all located in New York, and all of the alleged misappropriation took place in New York. Thus, the Court will apply New York law.

Under New York law, a plaintiff must allege that the defendant (1) came into possession of a trade secret of plaintiff's, and (2) used that trade secret in breach of an agreement, confidence, or duty or as a result of discovery by improper means. *Novus Partners*, 938 N.Y.S.2d at 228. Plaintiff alleges that it entered NDAs with Corning, the University, and ATRI, and then disclosed trade secrets to those Defendants regarding the methods and systems for manufacturing and engineering microwire. *See* FAC ¶¶ 14, 22-23. Plaintiff alleges that the Defendants disclosed Plaintiff's trade secrets to Plaintiff's competitors, in breach of the NDAs. *See, e.g.*, FAC ¶ 29. Thus, Plaintiff stated a claim for misappropriation against Corning, the University, and ATRI. Plaintiff fails to state a claim against Applied DNA, as Plaintiff does not allege the existence of an NDA, or a confidence or duty that Applied DNA owed to Plaintiff.

Accordingly, Corning, the University, and ATRI's motions to dismiss Count 10 are **DENIED**. Applied DNA's motion is **GRANTED**, and Count 10 is **DISMISSED WITHOUT PREJUDICE** with respect to Applied DNA.

### J.   Count 11 – Unfair Competition against Corning, the University, and ATRI

In Count 11, Plaintiff asserts a claim for unfair competition and tortious interference with prospective business relations against Corning, the University, and ATRI. Defendants move to dismiss this claim. The Court finds that the motion to dismiss Count 11 should be denied.

Under New Jersey[10] law, to state a claim of tortious interference with prospective economic advantage, a plaintiff must allege that: (1) the plaintiff has a reasonable expectation of economic advantage; (2) the interference or harm was done intentionally and with "malice"; (3) the interference caused the alleged loss of prospective economic gain; and (4) the injury caused damages. *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989). In this case, Plaintiff alleges that (1) it had reasonable expectations that it would be able to sell its microwire products to a large market; (2) Defendants intentionally interfered by blocking Plaintiff's attempts to develop relationships with potential clients and investors; (3) the interference caused Plaintiff to lose these opportunities, and (4) the loss of these opportunities caused Plaintiff damages, including numerous out of pocket costs and the loss of some of its patents. Defendants argue that this claim duplicate's Plaintiff's breach of contract claims, but that is not the case. The contract claims allege that Defendants disclosed Plaintiff's

---

[10] Defendants cite to the law of New Jersey, and Plaintiff does not take a position on choice of law. Thus, for the purposes of this motion, the Court will apply New Jersey law.

trade secrets, while the tortious interference claim alleges that Defendants interfered with Plaintiff's prospective business opportunities.

Accordingly, the motions to dismiss Count 11 are **DENIED**.

### K.  Count 12 – NY General Business Law Violations against ATRI

In Count 12, Plaintiff asserts a claim for violations of New York General Business Law §§ 349 and 350 against ATRI.  ATRI moves to dismiss.  The Court finds that the motion to dismiss Count 12 should be granted.

To make out a prima facie case under Section 349, a plaintiff must demonstrate that: 1) the defendant's deceptive acts were directed at consumers, 2) the acts are misleading in a material way, and 3) the plaintiff has been injured as a result.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).  "Private contract disputes, unique to the parties . . . would not fall within the ambit of the statute."  *Id.*  The same standards are applied to Section 350.  *See Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1291-92 (S.D.N.Y.1988) (denying recovery under Section 350 where plaintiff was not an injured consumer and did not allege injury to public at large).

In this case, Plaintiff alleges that ATRI falsely listed Plaintiff as a graduate of the CCIC and failed to provide Plaintiff with the business incubation services that it advertised.  Thus, ATRI's deceptive acts were directed at Plaintiff, and not at any set of consumers.  *See Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (dismissing claim because "dispute [was] fairly characterized as private").  Further, Plaintiff fails to specify what, if any, harm it sustained as a result of these alleged violations.

Accordingly, the motion to dismiss Count 12 is **GRANTED**, and Count 12 is **DISMISSED WITHOUT PREJUDICE**.

### L.  Count 13 – Section 1983 Violations against ATRI

In Count 13, Plaintiff asserts a claim for violations of 42 U.S.C. § 1983 against ATRI.  ATRI moves to dismiss.  The Court finds that the motion to dismiss Count 13 should be granted.

Section 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "deprived of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *Lugar v. Edmondson Oil Co., Inc., et al.*, 457 U.S. 922 (1982); 42 U.S.C. § 1983.  Where the defendant is a private entity, "the plaintiff must show that there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003); *see also West v. Atkins*, 487 U.S. 42, 49 (1988).  Plaintiff argues that ATRI was acting under color

13

of state law because ATRI received funding from the State of New York.  However, accepting government grants does not render an entity a "state actor" under Section 1983. *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982).  In fact, no reasonable interpretation of the facts of this case could support a showing that ATRI's actions were "fairly attributable" to the state.  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Accordingly, the motion to dismiss Count 13 is **GRANTED**, and Count 13 is **DISMISSED WITH PREJUDICE**.

### M. Count 14 – Patent Infringement against Applied DNA

In Count 14, Plaintiff asserts a claim against Applied DNA for direct infringement of Plaintiff's patents.  Applied DNA moves to dismiss.  The Court finds that the motion to dismiss Count 14 should be denied.

The Federal Circuit has held that a plaintiff can state a claim for direct infringement by pleading the factors set forth in Federal Rule of Civil Procedure Form 18, namely: "(1) an allegation of jurisdiction; (2) a statement that plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by 'making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007).  In this case, the Amended Complaint alleges that: (1) the Court has jurisdiction; (2) Plaintiff owns or owned 13 microwire-related patents; (3) Applied DNA infringed those patents by making, selling, and using "DNA Embedded Amorphous Micro Wire security products" (FAC ¶ 43); (4) Plaintiff gave Applied DNA written notice of infringement; and (5) Plaintiff is entitled to damages.  Thus, Plaintiff has properly stated a claim for direct infringement.

Accordingly, the motion to dismiss Count 14 is **DENIED**.

### N. Count 15 – Fraud against the University, Corning, and ATRI

In Count 15, Plaintiff asserts a claim for fraud against the University, Corning, and ATRI.  Defendants move to dismiss.  The Court finds that the motion to dismiss Count 15 should be granted.

Under New Jersey[11] law, a plaintiff claiming fraud must allege that a defendant 1) misrepresented a fact; 2) fraudulently; 3) intending to cause the plaintiff to rely thereon; 4) inducing such reliance; and 5) to plaintiff's injury.  *Averbach v. Rival Mfg. Co.*, 809 F. 2d 1016, 1019 (3d Cir. 1987).  A plaintiff must allege fraud with precision.  Fed. R. Civ. P. 9(b).  In Count 15, Plaintiff alleges that "defendants knowingly made material misrepresentations or omissions of fact," but Plaintiff does not identify any of these

---

[11] The parties agree that New Jersey law applies to this claim.

statements or omissions.  FAC ¶ 146.  In its opposition brief, Plaintiff directs the Court to a few scattered allegations elsewhere in the Amended Complaint, but these allegations are far too imprecise to survive Rule 9(b).  For example, Plaintiff alleges that "Corning, [the University,] and ATRI created the false impression that they were operating the CCIC as a legitimate business incubator," FAC ¶ 57(a), but Plaintiff does not specify what was said, who said it, when it was said, where it was said, etc.  Thus, Plaintiff failed to state a claim for fraud.

Accordingly, the motion to dismiss Count 15 is **GRANTED**, and Count 15 is **DISMISSED WITHOUT PREJUDICE**.

### O.  Count 16 – Unjust Enrichment against the University

In Count 16, Plaintiff asserts a claim for unjust enrichment against the University.  The University moves to dismiss this claim.  The Court finds that the motion to dismiss Count 16 should be granted.  A "[p]laintiff may not bring an unjust enrichment claim while also pleading the existence of a contract."  *Am. Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*, No. 11-1279, 2011 WL 3022243 (D.N.J. July 22, 2011) (quoting *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06–5814, 2007 WL 1756027, at *9 (D.N.J. June 18, 2007)).  In Count 5, Plaintiff asserts a breach of contract claim against the University.  Thus, Plaintiff cannot state a claim for unjust enrichment.  Accordingly, the motion to dismiss Count 16 is **GRANTED**, and Count 16 is **DISMISSED WITH PREJUDICE**.

### P.  Count 17 – Breach of Fiduciary Duty against ATRI

In Count 17, Plaintiff asserts a claim for breach of fiduciary duty against ATRI.  ATRI moves to dismiss.  The Court finds that the motion to dismiss Count 17 should be granted. A fiduciary is bound by a standard of utmost good faith, fairness and loyalty.  *See Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1078 (2d Cir. 1977).  To state a claim for breach of fiduciary duty, a plaintiff must show that there is a "special relationship" between the parties that gives rise to this heightened duty.  *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1231 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992).  In this case, Plaintiff has failed to allege anything more than a business relationship: Plaintiff alleges that ATRI advertised its business incubation services, and Plaintiff sought to take advantage of those services.  Offering business services does not give rise to a heightened duty.  Accordingly, the motion to dismiss Count 17 is **GRANTED**, and Count 17 is **DISMISSED WITHOUT PREJUDICE**.

### IV.   CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are **GRANTED** in part, and **DENIED** in part.  Counts 13 and 16 are dismissed with prejudice.  Counts 1, 2,

3, 4, 6, 7, 9, 10 (against Applied DNA), 12, 15, and 17 are dismissed without prejudice. Counts 5, 8, 10 (against Corning, the University, and ATRI), 11, and 14 will proceed. Plaintiff will be permitted to file a Second Amended Complaint. However, Plaintiff should be mindful that having one well-pleaded claim is better than having one hundred poorly-pleaded claims, and that failure to plead viable claims in the Second Amended Complaint will likely result in dismissal with prejudice. An appropriate order follows.


　　　　　　　　　　　　　　　　　　/s/ William J. Martini
　　　　　　　　　　　　　　　　**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 12, 2012**