CALLAGY LAW
*A Limited Liability Company*
Benjamin D. Light, Esq.
Matthew R. Major, Esq.
650 From Road, Suite 565
Mack-Cali Centre II
Paramus, New Jersey 07652
Phone: (201) 261-1700
Fax: (201) 261-1775
*Attorneys for Plaintiff Demodulation Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMODULATION, INC.,<br><br>                         Plaintiff,<br><br>v.<br><br>CORNING INCORPORATED, ET AL.,<br><br>                         Defendants. | Civil Action No.  11-296 (WJM) |

BRIEF IN REPLY TO NON-PARTIES RUDOLPH W. GIULIANI AND GIULIANI
PARTNERS LLC'S OPPOSTION TO PLAINTIFF'S MOTION TO ENFORCE NON-PARTY
SUBPOENAS AND IN OPPOSITION TO RUDOLPH GIULIANI'S CROSS-MOTION TO
QUASH AND FOR SANCTIONS.

On the Brief:

    Benjamin D. Light, Esq.
    Thelma Akpan, Esq.

Dated:

    March 31, 2014

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................2

TABLE OF AUTHORITIES ...........................................................................................3

PRELIMINARY STATEMENT ......................................................................................5

LEGAL ARGUMENT ......................................................................................................8

    I.    THE APPLICABLE LEGAL STANDARD .......................................................8

        a.    No Undue Burden Exists..................................................................................9

    II.    GIULIANI'S CROSS-MOTION SHOULD BE DENIED. ..............................10

        a.    Mr. Giuliani Cannot Be Shielded Under the Apex Rule As He Admitted To Having Knowledge Of The Apex Deal. ...........................................................................10

        b.    Giuliani's Counsel Reneged on the Tentative Resolution of Plaintiff's Discovery Request. ...........................................................................................................12

        c.    No Good Cause for a Protective Order Exists. .............................................13

    III.    THE AWARD OF ATTORNEY'S FEES AND SANCTIONS ARE INAPPROPRIATE............................................................................................13

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

Liberty Mut. Ins. Co. v. Diamante

    CIV. A. 97-10744-RCL, 2000 WL 791190 (D. Mass.) ..................................................8

Minter v. Wells Fargo Bank, N.A.

    258 F.R.D. 118, 126 (D. Md. 2009)............................................................................9

Alberts v. HCA Inc.

    2009 WL 1384978 ....................................................................................................13

Alberts v. HCA Inc.

    MISC.06-0088(RMU), 2009 WL 1384978 (D.D.C.)................................................13

Builders Ass'n of Greater Chi. v. City of Chicago

    215 F.R.D. 550, 554 (N.D.Ill.2003) ..........................................................................13

CBS, Inc. v. Ahern

    102 F.R.D. 820, 822 (S.D.N.Y.1984)) ......................................................................10

Mulvey v. Chrysler Corp.

    106 F.R.D. 364, 366 (D.R.I.1985) ............................................................................10

Oppenheimer Fund, Inc. v. Sanders

    437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) ..............................................7

Schmulovich v. 1161 Rt. 9 LLC

    CIV.A. 07-597FLW, 2007 WL 2362598 (D.N.J)........................................................7

Scott v. Burress

    2008 WL 585072 ......................................................................................................13

Transcor, Inc. v. Furney Charters, Inc.

    02-MC-404-RDR, 2003 WL 548956 (D. Kan.)..........................................................7

Travelers Indem. Co. v. Metro. Life Ins. Co.
  3:04MC467CFDTPS, 2005 WL 975661 (D. Conn.) ..........................................................................8

WebSideStory, Inc. v. NetRatings, Inc.
  06CV408 WQH(AJB), 2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) ............................................10

**Statutes**

Fed. R. Civ. P. 45..................................................................................................................................6

Plaintiff, Demodulation, Inc. ("Demodulation" or "Plaintiff") submits this Reply Brief (the, "Reply") to Non-Parties Rudolph Giuliani ("Mr. Giuliani") and Giuliani Partners LLC ("Giuliani Partners" or "GP") opposition to the Motion to Enforce Non-Party Subpoenas (the "Motion to Enforce"); and in Opposition (the, "Opposition") to Giuliani's Cross-Motion to Quash and for Sanctions (the "Cross-Motion").

## PRELIMINARY STATEMENT

On August 6, 2004, Giuliani Partners entered into an Engagement Agreement (the, "Agreement") with Applied DNA Sciences, Inc. (See the Engagement Agreement, dated August 6, 2004, "Exhibit A"). Pursuant to the Agreement, Giuliani Partners offered consulting services, and agreed to assist ADNAS with the strategic positioning, enhancement and development of the ADNAS Business, This included the development of ADNAS products and services, namely the advancement of microwire technology, a technology belonging to Demodulation, Inc.

On April 6, 2005, a press release announced ADNAS had signed an agreement with Advanced Coding Systems, Ltd., who claimed to be the world's only producer of continuous glass-coated amorphous microwires, for use in products for coding, sensing, authentication, track and trace. (See the Bionity.com Press Release, dates April 6, 2005, "Exhibit B"). Plaintiff became aware of this announcement, and notified Giuliani Partners that the microwire technology had, in fact belonged to Demodulation, Inc. Coincidentally, on April 8, 2005, Giuliani Partners ended the Engagement Agreement with ADNAS by way of a Termination Agreement. (See the Termination Agreement, dated April 8, 2005, "Exhibit C").

The circumstances around the consulting relationship between Giuliani Partners and ADNAS are extremely important to the furtherance of Plaintiff's ligation, as it would shed light

on the inappropriate dissemination of the microwire intellectual property to unbeknownst third-parties. Accordingly, Plaintiff served a non-party subpoena to Giuliani Partners on or about December 5, 2013, commanding Giuliani Partners to designate the appropriate representative to appear on January 6, 2014 for a deposition. (See the Certification of Benjamin Light, Esq., dated February 21, 2014, ¶¶2-3, Document 151-2). Following the service of the non-party subpoena to Giuliani Partners, Plaintiff's Counsel spoke with Bracewell & Giuliani, specifically, Marc Mukasey, Esq.  Mr. Mukasey expressed in part that no person at Giuliani Partners had knowledge or information related to the subject matter of the non-party subpoena, and that no responsive documents to the non-party subpoena had been located. (Light Cert. ¶¶4-5). As a result, on or about January 15, 2014, and following the failure of Giuliani Partners to comply with the non-party subpoena, Plaintiff served a similar non-party subpoena on Rudolph W. Giuliani ("Mr. Giuliani") commanding Mr. Giuliani to appear for a deposition on January 29, 2014 with all responsive documents. After the service of Mr. Giuliani's Subpoena, Plaintiff's Counsel again spoke with Counsel from Bracewell & Giuliani, LLP, Seth Cohen, Esq. During this conversation, Plaintiff offered to withdraw Mr. Giuliani's Subpoena if he certified that had no personal knowledge regarding the subject matter of the subpoena. (Light Cert. ¶¶8-9). This would have made Plaintiff's initial Subpoena to him moot.

After this conversation, Plaintiff's Counsel received a letter from Mr. Cohen on or about February 14, 2014, demanding that the Subpoena be withdrawn without the agreed upon Certification. (See Mr. Cohen's letter, dated February 14, 2014, Document 151-7). Mr. Cohen further stated two documents were located as responsive to Plaintiff's document demands: the Agreement; and (2) a Terminating Agreement dated April 8, 2005, but had not provided them. Following the receipt of this letter, Plaintiff sent a final good-faith demand letter on or about

February 19, 2014 to Mr. Cohen, demanding that both Giuliani Partners and Giuliani comply with their respective non-party Subpoenas and to produce the Agreement and the Terminating Letter.

Because no production or compliance was made by Mr. Giuliani or his Counsel, on February 21, 2014, Plaintiff's filed the instant Motion to Enforce Non-Party Subpoenas in effort to compel Mr. Giuliani and Giuliani Partners' compliance with Plaintiff's subpoenas. In response to Plaintiff's filed Motion, on or about February 24, 2014, Giuliani's Counsel finally produced the two referenced documents, the Agreement and subsequent Terminating Agreement, and the Certification of Rudolph Giuliani. (See the Certification of Rudolph Giuliani, dated February 24, 2014, "Exhibit D").

A review of the Certification provides that Mr. Giuliani has more personal knowledge of the ADNAS deal than his Counsel led Plaintiff's to initially believe. It seems that Mr. Giuliani has some recollection as to the circumstances surrounding the failed deal between Giuliani Partners and ADNAS. Further, Mr. Giuliani's Counsel has continued to fail to produce a more appropriate individual with specific knowledge of the ADNAS deal, which has left Plaintiff with no other deponent other than Mr. Giuliani. The underlying purpose of both Subpoenas is to gain insight to the circumstances surrounding the consulting Agreement with ADNAS, and the circumstances as to why Giuliani Partners terminated the ADNAS Agreement after becoming aware of Demodulation's ownership of the technology. Accordingly, Plaintiff's continue to seek the deposition from Mr. Giuliani, in addition to the deposition a representative from Giuliani Partners in compliance with Plaintiff's Subpoena.

## LEGAL ARGUMENT

### I. THE APPLICABLE LEGAL STANDARD

It is a long-standing discovery tenet that the scope of discovery in federal litigation is broad, and that parties may obtain discovery regarding "any non-privileged matter that is relevant to any parties claim or defense—including…the identity and locations of persons who know of any discoverable matter." <u>Transcor, Inc. v. Furney Charters, Inc.</u>, 02-MC-404-RDR, 2003 WL 548956 (D. Kan.); Fed. R. Civ. P. 45. Relevance, as dictated by Fed. R. Civ. P. 26, remains within the discretion of the District Court, and discovery request should be granted, if there is any possibility that the information sought may be relevant to the general subject matter of the action. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 350, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978).

Courts will quash or modify a subpoena when it "subjects a person to undue burden," in accordance with Fed. R. Civ. P. 45(d)(3)(A)(iv). This Court has already established when undue burden regarding a subpoena exists, citing an undue burden when "the subpoena is unreasonable or oppressive." <u>Malibu Media, LLC v. John Does No. 1-30</u>, CIV.A. 12-3896-MAS, 2012 WL 6203697 (D.N.J.) (citing <u>Schmulovich v. 1161 Rt. 9 LLC</u>, CIV.A. 07-597FLW, 2007 WL 2362598 (D.N.J)). This Court has cited several factors to determine the reasonableness of a given subpoena, including: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described;

and (7) the burden imposed on the subpoenaed party. Id. It remains the moving party's burden to demonstrate that the subpoena is burdensome and unreasonable. Id.

As provided in the previously submitted Certification of Benjamin D. Light, Esq., it is evident that no such unreasonableness or oppression exists that rises to the level of an undue burden on Giuliani/Giuliani Partners to excuse the compliance with Plaintiff's subpoena.

Upon this information and belief, Plaintiff has reason to request the production of relevant documents from the non-parties, as this information is very important to the full litigation of Plaintiff's claims against Corning Incorporated. Furthermore, the request of documents and deposition testimony from the non-parties is extremely limited in scope, as demonstrated by Plaintiff's request for very specific documents, and of very limited subject matter. Plaintiff does not seek to saddle Mr. Giuliani or Giuliani Partners with an unreasonable production of documents, and have requested a narrowly tailored discovery request accordingly.

    **a. No Undue Burden Exists.**

Courts have found undue burden when non-parties are requested to produce voluminous documents when the party requesting them can produce or obtain the documents at their own expense, or if those subpoenaed documents would require the non-party to review thousands of pleadings that are not easily obtainable. Travelers Indem. Co. v. Metro. Life Ins. Co., 3:04MC467CFDTPS, 2005 WL 975661 (D. Conn.). An undue burden has been further found when the issuing party "has failed to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena." Liberty Mut. Ins. Co. v. Diamante, CIV. A. 97-10744-RCL, 2000 WL 791190 (D. Mass.).

There has been a low burden placed on Mr. Giuliani and Giuliani Partners in accordance with Plaintiff's subpoena request. This is evidenced by Plaintiff's attempt to cooperatively and pointedly pursue the information requested. Mr. Giuliani has continuously asserted that he has no personal or significant knowledge of the facts, and as a result, Plaintiff was willing to withdraw the filed against Giuliani subpoena upon receipt of a certification that Giuliani has no personal knowledge regarding the subject matter of his subpoena. (See Light Cert. ¶8). Instead, Mr. Cohen responded with a demand of withdrawal without the attached certification. Eventually, Giuliani's Counsel produced two responsive documents, and the Certification of Rudolph Giuliani indicating that Mr. Giuliani, in fact, does have some relevant knowledge surrounding the ADNAS deal. There is no evidence that the factors articulated by this Court have amounted to, or will continue to amount to an undue burden. Therefore, Giuliani and Giuliani Partners have an obligation to act in compliance with the Federal Rules of Procedure and produce responsive documentation and testimony in accordance with Plaintiff's issued subpoena.

## II. GIULIANI'S CROSS-MOTION SHOULD BE DENIED.

### a. Mr. Giuliani Cannot Be Shielded Under the Apex Rule As He Admitted To Having Knowledge Of The Apex Deal.

Giuliani's Counsel refers generally to the apex decision rule in its brief, which prevents a deposition "sought simply because [an individual] is the CEO or agency head—the top official, not because of any special knowledge of, or involvement in, the matter in dispute." Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 126 (D. Md. 2009). While many jurisdictions have adopted this rule, it is aimed to protect the depositions of a high level executive solely because he is the CEO or agency head—the top official, despite the fact that the executive lacks any special knowledge of, or involvement in, the matter in dispute. Id. at 126. However, several district

courts have determined that this rule is only applicable to the apex executive who lacks any knowledge of relevant facts. See Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I.1985). Courts have determined that when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition. WebSideStory, Inc. v. NetRatings, Inc., 06CV408 WQH(AJB), 2007 WL 1120567 (S.D. Cal. Apr. 6, 2007). In other words, when a high-level executive has some knowledge of the facts at issue, this executive is not immune to deposition.

Courts often consider several factors when considering an apex decision and whether good cause for a protective order exists, including: 1) if the information is being sought for a legitimate purpose; (2) will the disclosure violate any privacy interest; 3) will disclosure cause a party embarrassment; 4) whether the disclosure is important to public health and safety; 5) will sharing of the information among litigations promote fairness and efficiency in litigation; and 6) whether the case involves issues of public importance. Id.

Additionally, a claimed lack of knowledge on the behalf of the deponent, or the fact an apex witness has a busy schedule is not a basis for granting a protective order or foreclosing otherwise proper discovery. Id. (citing CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y.1984)).

Mr. Giuliani's Counsel asserted in its Opposition Motion that Mr. Giuliani did not have any significant personal knowledge of the information Plaintiff's subpoena is seeking. Before Plaintiff's filing of the instant Motion, no such Certification affirming that was ever provided to Plaintiff. Only until after this Motion was filed did Giuliani's Counsel present a Certification. On the contrary, the delayed Certification actually reflects Mr. Giuliani's recollection of the ADNAS deal. Despite this, Mr. Giuliani's Counsel continues to assert that the subpoena to Mr. Giuliani is

11

unnecessary, as his knowledge is limited and lower ranking employees were more directly involved in the ADNAS deal. While this may be the case, neither Mr. Giuliani nor Giuliani Partners has offered a more qualified representative able to provide testimony responsive to the Subpoena request. This, in conjunction with the fact that Mr. Giuliani's Certification admits to having relevant knowledge of the ADNAS deal, Plaintiff respectively requests that the Court grants Plaintiff's Motion to Enforce the Non-Party Subpoenas.

### b. Giuliani's Counsel Reneged on the Tentative Resolution of Plaintiff's Discovery Request.

In a series of e-mail and phone correspondence, Plaintiff's Counsel attempted to resolve this discovery issue with Bracewell & Giuliani, namely with attorney, Seth Cohen, Esq. (See E-mail correspondence, dated February 27, 2014, "Exhibit E"). An agreement between Plaintiff's Counsel and Mr. Cohen had been reached, which provided that: "1) Giuliani Partners, LLC fully complies with its subpoena by selecting a time, date and location to conduct the deposition and producing the person(s) with the most knowledge for that deposition; (2) The Compliance Date of the subpoena to [Mr. Giuliani] has been extended through _____. Plaintiff will not object on timeliness grounds to a motion to quash made on behalf of Mr. Giuliani if the motion is made five days prior to the Compliance Date. Plaintiff agrees that it will withdraw the subpoena to Mr. Giuliani if it is satisfied with the deposition of Giuliani Partners; and 3) The deposition times, dates and locations of both the designee of Giuliani Partners, LLC, and Rudolph Giuliani must be agreed upon by Plaintiff's Counsel. ("Exhibit E").

Upon the eve of reaching a resolution with Mr. Cohen, another attorney at Bracewell Giuliani, Michael Hefter, Esq., e-mailed Plaintiff's Counsel, stating that the tentative resolution was off. Further, Mr. Hefter's e-mail placed an ultimatum on Plaintiff, threatening file the Cross-

Motion to Quash and for Sanctions if Plaintiff's Subpoenas were not withdrawn. See Mr. Hefter's e-mail, dated February 28, 2014, "Exhibit F"). Giuliani's Counsel filed the Cross-Motion to Quash accordingly. Plaintiff has been working in good-faith to reach resolution of this matter, and has been continuously thwarted by Giuliani's Counsel at every step of the process.

### c. No Good Cause for a Protective Order Exists.

None of the factors used to determine good cause for a protective order exists in the present case. The information sought from Mr. Giuliani is completely legitimate as it is needed for the furtherance of Plaintiff's case against Coring Incorporated, the disclosure of any additional information does not violate a privacy interest, nor does it have any public health implications. Most importantly, should the Subpoenas be complied with, the information obtained from them will promote the fairness and efficiency of this litigation. Because the burden is upon the party seeking a protective discovery order to show good cause for the order by demonstrating specific harm or prejudice, Giuliani's Counsel will not be able to meet this high burden. Accordingly, Plaintiff continues to seek the enforcement of the Subpoena against Mr. Giuliani and Giuliani Partners as there is no undue burden imposed, it is an admitted fact that Giuliani has insight into the ADNAS deal, and good cause has not been established for this Court to grant a discovery protective order.

### III. THE AWARD OF ATTORNEY'S FEES AND SANCTIONS ARE INAPPROPRIATE.

Giuliani and Giuliani Partners contend that the award of attorney's fees and sanctions are appropriate "where a party has issued a subpoena for an improper purpose." No such improper purpose exists here. Plaintiff has given both Giuliani and Giuliani Partners an opportunity to relieve Giuliani from being deposed upon receipt of his Certification stating he has no significant

13

knowledge of the facts central to Plaintiff's litigation. Giuliani produced no such certification until the instant Motion was filed. Giuliani's Counsel, in the Opposition brief, asserted that Plaintiff's subpoena of Giuliani was issued in effort to "impose an undue burden on a public figure." (See Giuliani Cross-Motion to Quash and for Sanctions, dated March 3, 2014, Document 151-8.) These motives are simply untrue. Instead of complying with the subpoena power of the Court, Giuliani continued to ignore Plaintiff's discovery requests and filed this Motion to Quash without a base in law or fact.

  A blatant abuse of subpoena power needs to be apparent for the award of sanctions in accordance with Rule 45(c)(1). Alberts v. HCA Inc., MISC.06-0088(RMU), 2009 WL 1384978 (D.D.C.). The Ninth Circuit has determined that absent any undue burden imposed by an oppressive subpoena, a facially defective subpoena, or a subpoena issued in bad faith, Rule 45(c)(1) sanctions are inappropriate (emphasis added). Mount Hope Church v. Bash Back!, 11-35632, 2012 WL 5907498 (9th Cir.). The Court further opined that "the scope of permissible sanctions under Rule 45(c)(1) should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends." Id. Even if the present subpoena in question is ultimately deemed to be unwarranted, which it is not, Courts have determined that unwarranted subpoena, with the absence of being issued in bad faith, does not warrant the issuance of sanctions. Alberts v. HCA Inc., 2009 WL 1384978; See also Scott v. Burress, 2008 WL 585072, at *6–7 (E.D.Mich. Mar.3, 2008 (holding that the magistrate judge improperly award sanctions despite the fact the subpoenas were improper); Builders Ass'n of Greater Chi. v. City of Chicago, 215 F.R.D. 550, 554 (N.D.Ill.2003) (overturning magistrate judge's award of sanctions under Rule 45 absent a determination that the quashed subpoenas were issued in bad faith. Lastly, a

party's failure to withdraw a subpoena does not automatically demonstrate improper conduct that creates an undue burden or bad faith.

Plaintiff's Subpoena request does not rise to the requisite level of bad faith or burden to justify the award of attorney's fees and sanctions that Mr. Giuliani or Giuliani Partners purport to exist. Plaintiff has attempted to settle this discovery issue with Giuliani before his filing of the cross-motion, and on the eve of reaching an agreement to settle the terms surrounding Plaintiff's discovery request, Giuliani's Counsel immediately rescinded the agreement.

Plaintiff's Motion to Enforce was filed accordingly, after several good-faith attempts were made to obtain Plaintiffs' discovery in the least contentious way possible. After Giuliani continued to renege on the commitments to produce either certifications or responsive documents, Plaintiff's had no choice but to file the instant motion. Nothing in case law supports the granting of attorney's fees or sanctions, as Mr. Giuliani's refusal to reach a cooperative agreement with Plaintiff resulted in Plaintiff's Motion to Enforce.

## CONCLUSION

For the foregoing reasons, Plaintiff continues to respectfully request that this Court grant the Motion to Enforce, and that Giuliani's Cross-Motion to Quash and for Sanctions, be denied in its entirety.

Respectfully submitted,

CALLAGY LAW
*A Limited Liability Company*

By: _____

15

                                          Benjamin D. Light, Esq.
                                          650 From Road, Suite 565
                                          Mack-Cali Centre II
                                          Paramus, New Jersey 07652
                                          Phone: (201) 261-1700
                                          Fax: (201) 261-1775
                                          E-mail: blight@callagylaw.com
                                          *Attorneys for Plaintiff Demodulation Inc.*

Dated:        March 31, 2014