UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEMODULATION, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**APPLIED DNA SCIENCES, INC.,** *et al.*,<br><br>Defendants. | Civ. No. 2:11-cv-00296 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Demodulation, Inc. ("Demod") brings this action against three Defendants: (1) Corning Inc. ("Corning"); (2) Alfred University (the "University"); and (3) Alfred Technology Resources, Inc. ("ATRI"). The Court previously granted a motion to dismiss a number of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Corning now moves for summary judgment under Federal Rule of Civil Procedure 56 on the remaining three claims against it, arguing that those claims are time-barred. Plaintiff cross-moves for leave to file a Second Amended Complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Corning's motion is **GRANTED**, and Plaintiff's cross-motion is partially **GRANTED** and partially **DENIED**.

### I.   BACKGROUND

      The following facts are drawn from the Amended Complaint. Plaintiff Demod is a technology start-up company with its principal place of business in Westwood, New Jersey. First Amended Complaint ("FAC" or "Amended Complaint") ¶ 1, ECF No. 34. Defendant Corning is a corporation with its principal place of business in Corning, New York. *Id.* ¶ 4. Defendant University is a private university located in Alfred, New York. *Id.* ¶ 5. Defendant ATRI is a non-profit joint venture between Corning and the University with its principal place of business in Alfred, New York. *Id.* ¶¶ 6, 20-21. Robert Ecklin was an Executive Vice President at Corning and the President of ATRI. *Id.* ¶ 19.

      ATRI and the University own and operate the Ceramics Corridor Innovation Center (the "CCIC"), a business incubator that helps start-up companies develop and

market emerging ceramics-related technology. *Id.* ¶¶ 19-20. The CCIC was established with the help of grants from the New York State government. *Id.* The CCIC advertises that companies "under its care" can take advantage of services, including "intellectual property management," "investor/strategic partner linkages," "international trade assistance," and "technology commercialization." *Id.* ¶ 20.

Plaintiff owned certain patents and other intellectual property related to an amorphous glass-coated metal microwire. FAC ¶ 9. Microwire is a high-tech hair-like fiber with a unique signature that can be encoded and modified. *Id.* ¶¶ 13-15. Microwire is practically invisible, but the signal from a small strand of microwire can be detected from several kilometers away, even if no power source is connected to the microwire. *Id.* The properties of microwire change based on changes in temperature and pressure, and biological and chemical conditions. *Id.* ¶ 15. Plaintiff's patents concern, among other things, several specific methods and systems for manufacturing and engineering microwire, and detecting and reading the signal produced by microwire at both short and long distances. *Id.* ¶ 14. The U.S. Department of Energy conducted an evaluation of Plaintiff's microwire technology and concluded that it had myriad applications for homeland security, national defense, article tracking and authentication, and the energy industry. *Id.* ¶ 15.

In 2003, Plaintiff entered into an agreement with the University to commercialize its microwire. FAC ¶ 17. Pursuant to this agreement, the University was granted a one percent (1%) royalty on all gross revenue recognized from the eventual sale of microwire products, in exchange for the University's efforts to obtain state and federal funding for the research and development of microwire technology. *Id.* At the time the parties entered the agreement, experts at the University determined that the annual market for microwire products was likely to be between $250,000,000 and $2,000,000,000. *Id.* ¶ 18. As part of its agreement with Plaintiff, the University invited Plaintiff to become a tenant of the CCIC. FAC ¶ 19. Plaintiff accepted this offer and moved into the CCIC in 2003. *Id.* ¶ 21. Plaintiff executed written non-disclosure agreements ("NDAs") with the University, ATRI, and Corning to protect its trade secrets relating to microwire. *Id.* ¶ 22. Plaintiff "revealed extensive trade secrets to these defendants." *Id.*

Plaintiff alleges that the University, ATRI, and Corning failed to disclose various conflicts of interest while Plaintiff was at the CCIC. FAC ¶ 23. Plaintiff also alleges that Defendants intentionally "blackball[ed]" Plaintiff in order to protect their conflicting interests. *Id.* ¶ 38. For instance, Plaintiff alleges that Mr. Ecklin publicly made false statements concerning Plaintiff's technology, telling various government officials that it was "insignificant and not deserving of investment" and that Plaintiff had stolen the technology from Corning. *Id.* ¶¶ 30-33. Finally, Plaintiff alleges that Defendants disclosed confidential information obtained from Plaintiff about Plaintiff's microwire technology for their own benefit. *Id.* ¶¶ 110-112, 124.

Plaintiff's tenancy at the CCIC was terminated in 2008. FAC ¶¶ 91, 57(b). Plaintiff alleges that it suffered damages as a result of Defendants' misconduct, including

the loss of a lucrative contract with Family Dollar and the loss of the capital it used to pursue funding and business relationships. *Id.* ¶¶ 47-48. In addition, without any funding or investment, Plaintiff was unable to pay the fees to maintain some of its patents. *Id.* ¶ 49.

On December 12, 2012, the Court dismissed all but three counts of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *Demodulation, Inc. v. Applied DNA Sciences, Inc.*, No. 2:11-CV-00296, 2012 WL 6204172, at *13 (D.N.J. Dec. 12, 2012). In doing so, the Court noted Defendants' argument that Plaintiff's claims are time-barred. *Id.* at *6 n.3. However, the Court stated that because "the Amended Complaint is a morass of disjointed vignettes with no clear chronology and very few dates," it could not "make statute of limitations determinations at [that] time." *Id.*

Subsequently, the Court permitted the parties to conduct limited discovery on the statute of limitations issue, and granted Corning's request to file a motion for summary judgment arguing that the remaining counts against it are time barred. Order, May 31, 2012, ECF No. 119. Discovery on the statute of limitations issue has ended. *Id.* Corning moves for summary judgment on the remaining claims against it. ECF No. 132. Plaintiff cross-moves for leave to file a Second Amended Complaint. ECF No. 140.

## II.     MOTION FOR SUMMARY JUDGMENT

The remaining counts from the Amended Complaint assert claims for breach of contract (Count 8), misappropriation of trade secrets (Count 10), and unfair competition (Count 11) against Corning. Plaintiff filed the instant action on January 18, 2011. ECF No. 1. Corning moves for summary judgment on the grounds that these claims are time-barred. The Court agrees.

### A.  Undisputed Facts

The following facts are undisputed. Plaintiff Demod alleges ownership of the rights to certain patents and trade secrets involving microwire technology. FAC ¶¶ 9, 10, 13, 14. Plaintiff alleges that, in 2003, it located its operations at CCIC, which is managed by ATRI. *Id.* ¶ 16, 17. Plaintiff alleges that it remained at ATRI through 2008. *Id.* ¶ 21.

While at CCIC, Plaintiff entered into an NDA with Corning (the "Corning NDA"). FAC ¶ 22; Declaration of Liza M. Walsh ("Walsh Decl.") Ex. B, ECF No. 132-3. The NDA states that Corning shall hold Plaintiff's "Confidential Information" in confidence. Walsh Decl. Ex. B, at § 2(A). "Confidential Information" is defined as "data, materials, products, technology, computer programs, specifications, manuals, business plans, software, marketing plans, financial information, and other information disclosed or submitted orally, in writing, or by any other media . . . ." *Id.* at § 2(b).

In support of its motion for summary judgment, Corning submitted a declaration attaching the handwritten notes of Plaintiff's Operations Manager, Dr. Wesley King.

3

Declaration of Rukhsanah L. Singh ("Singh Decl.") Exs. A-C, ECF No. 142-2. On October 14, 2004, Dr. King wrote the following in his notes:

> On 10/8/04, I spoke with a former employee of Corning. They informed me of a conversation they had in which they learned that Corning Inc. is involved in research + development related to glass-coated wire. Specifically, they learned that Corning is working with an Israeli company on glass-coated silver wires. Corning buys the glass-coated silver wire then removes the glass coating. The application is not clear, although I know these kinds of metallic wires or thread are used for security purposes in currency. Using the glass-coated microwire process, one could obtain a very smooth surface for the metal core compared to conventional wire drawing techniques. This application was disclosed to Corning by DEMOD, as was the smooth surface resulting from our process.

Singh Decl. Ex A. On October 28, 2004, under the heading "CORNING," Dr. King's notes ask: "Who is badmouthing?"; "Prove-able?"; "What does DEMOD have to do?"; "DEMOD has to do something."; and "Is it possible that Corning is not violating DEMOD IP?" Singh Decl. Ex. B. Then, on January 4, 2005, Dr. King wrote:

> Corning matter: On January 1, 2005, I spoke with a former employee of Corning (the same individual I spoke with on October 14, 2004). This person advised me that a researcher at Corning, under the direction of Dr. Nic Borelli, was looking at the fabricating glass-coated metal wire (in this case silver). The researcher was not informed about the application of such material and felt that it was a scientific curiosity only."

Singh Decl. Ex. C.

On January 9, 2005, Plaintiff's Chief Executive Officer James O'Keefe sent a letter to Corning alleging that Corning had breached the NDA by disclosing Plaintiff's confidential information to third parties and conducting "on-going development efforts related to glass coated metal wires involving relations with foreign entities." Walsh. Decl. Ex. D. O'Keefe's letter specifically mentioned Dr. Nicholas Borelli "as managing these exploratory research and development efforts." *Id.* Corning Senior Vice-President and Director of the Legal Department Vincent Hatton responded to Plaintiff's letter on January 19, 2005. Walsh Decl. Ex. E. In his response, Hatton advised Plaintiff that Corning had reviewed the NDA and spoken to relevant personnel regarding Plaintiff's complaints. *Id.* Hatton stated that he had uncovered no indication of wrongdoing or breach of the NDA. *Id.*

On January 24, 2005, O'Keefe sent an email to Hatton, which stated "for your clarification" and had a signed letter attached. Walsh Decl. Ex. F, G. In the attached letter, Plaintiff referenced his January 9, 2005 correspondence, and noted that he wished to help Hatton "understand the gravity of the problem confronting our two

organizations." Walsh Dec. Ex. G. Plaintiff then described several events and circumstances, including: (1) a summer 2004 meeting with elected officials and government representatives where Corning employees allegedly minimized Plaintiff's technology and capabilities, and made derogatory comments about Plaintiff; (2) Plaintiff's contemporaneous efforts to seek the support of Congressman Houghton, with no response; (3) Plaintiff's efforts "while all this was occurring" to seek support from executives in New York State, allegedly learning in those conversations that Corning employees had made disparaging remarks about Plaintiff, thus limiting Plaintiff's ability to raise capital; and (4) Corning's ongoing development of glass-coated wire, with the letter stating that "[t]his does indeed violate our NDA." *Id.* Near the end of his letter, O'Keefe states that "my team and I have been hurt by these actions. *Id.* On February 14, 2005, Hatton responded to Plaintiff's January 24, 2005 letter by writing to Plaintiff's counsel. Walsh Decl. Ex. I. In that letter, Hatton reiterated that Corning had no evidence to suggest a violation of the NDA. *Id.*

Plaintiff maintains that Hatton's assurances that Corning had not committed wrongdoing or breached the NDA were false. In support, Plaintiff has provided deposition testimony from Dr. Borelli indicating that he has never spoken with Hatton, and had not heard of Plaintiff prior to the filing of the instant action. Declaration of Benjamin D. Light ("Light Decl."), Ex. E. 40:14-24, 42:3-7, ECF No. 141. Plaintiff has also produced a document, uncovered during discovery, which Plaintiff alleges shows that, on May 13, 2004, Corning met with Texas Instruments, Matrices, Advanced Metals Technology, and Down Corning about radio frequency identification ("RFID") applications for microwire. Light Decl. Ex. B. Plaintiff alleges that it had revealed information about RFID applications for microwire to Corning, and that this meeting violated the NDA.

Turning back to Dr. King's handwritten notes, on February 22, 2005 his notes reference a "[d]iscussion of difficulty in getting funding." Singh Decl. Ex. D. In reference to this funding discussion, his notes contain comments such as "getting push-back from Corning people" and "[p]eople from Corning or with ties to Corning sitting on economic development council . . . . intrinsic conflict of interest!!!" *Id.* Then, on April 25, 2006, under the heading "Entire story about Corning NYS/DOE," Dr. King writes "investigative reporter?" and "Needs someone [at] a high level to start probe." *Id.* On March 30, 2007, Dr. King writes "Corning is our enemy." *Id.* Finally, in his notes dated January 24, 2008, Dr. King writes "Corning influence peddling, public corruption, undue influence over School, fraud, NYS unwilling to investigate/correct due to influence; complaint taken to NYS – nothing happening foreign/state collaboration." *Id.*

Corning submitted a supplementary declaration attaching several documents concerning Plaintiff's ongoing investigation of Corning. *See* Supplemental Declaration of Linda M. Wash ("Supp. Walsh Decl."), ECF No. 160-2. For instance, Corning presents a timeline created by O'Keefe entitled "Corning Incorporated Interference"

5

indicating that, in 2004, "Demodulation learns from former Corning Employee that Corning Inc. has purchased microwire product from the Israeli company ACS and is attempting to reverse engineer and process it." Supp. Walsh Decl. Ex. B, pg. 9. That timeline also references the January 2005 letters between Plaintiff and Corning, stating "January – Demodulation writes letters to Corning Inc. and Chairman James Houghton regarding conflicts of interest, interference, NDA violation and possible patent infringement by Corning . . . Letter indicates that Demodulation knows researcher (Borelli) that is in charge of reverse-engineering efforts." *Id.* Another timeline states, under the heading "Late fall 2004 beginning 2005," that a Corning executive took "extraordinary steps to diminish and destroy Demodulation's creditability (sic)." Supp. Walsh Decl. Ex C. Yet another timeline indicates that, in public meetings in 2004, "Corning Inc. business leaders (R.L. Ecklin) and Rep. Amory Houghton make it clear that Demodulation is not welcome in Western NY." Supp. Walsh Decl. Ex. D. Then, on June 19, 2006, O'Keefe sent a letter to Attorney General Eliot Spitzer, asserting his belief that Corning "deliberately used its influence and economic power to insure the failure of Demodulation," and recounting numerous acts of alleged "defamation, interference, and slander." Supp. Walsh. Decl. Ex E, pg. 1. Finally, an engagement letter addressed to O'Keefe, dated June 9, 2008, indicates that Plaintiff hired Manatt, Phelps & Phillips, LLP to "analyze possible claims . . . including unfair competition and antitrust, against Corning." Supp. Walsh Decl. Ex. H, pg. 1.

In response to Corning's summary judgment motion, Plaintiff submitted a declaration by O'Keefe. Declaration of James O'Keefe, Jr. ("O'Keefe Decl."), ECF No. 140. In his declaration, O'Keefe makes a number of assertions about the meaning of the letters he sent to Corning in January 2005. *Id.* Essentially, he maintains that his letters referred only to ongoing development efforts related to glass-coated metal wires with foreign entities by Dr. Borelli, and to specific derogatory statements made by Ecklin at a July 15, 2004 meeting. O'Keefe Decl. ¶¶ 13-14. He states that he wrote the January 9, 2005 letter "to determine if a legal matter existed that required attention." O'Keefe Decl. ¶ 11. And he maintains that "he accepted Mr. Hatton's representation that there had been no breaches or other wrongdoing by Corning." O'Keefe Decl. ¶ 15. Finally, he declares that he was unaware that Corning was working with one of Plaintiff's competitors when he wrote the January letters, and states that if he had known that Corning was working on an RFID application for microwire, he would have taken legal action. O'Keefe Decl. ¶ 19.

### B. Legal Standard

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). A defendant is entitled to summary judgment on statute of limitations grounds where there is no genuine dispute of material fact as to when the limitations period began to run, and based on that accrual date the defendant is entitled to judgment as a matter of law. *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 304 (3d Cir. 2004); see also Fed. R. Civ. P. 56(a).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

### C. Discussion

Corning argues that Plaintiff's claims against it for breach of contract, misappropriation of trade secrets, and unfair competition accrued in 2004 or, at the latest, when Plaintiff sent the January 9, 2005 letter. Accordingly, because Plaintiff did not file its original Complaint until January 18, 2011, Corning maintains that each of these claims are time-barred and must be dismissed. Plaintiff argues that the claims had not accrued as of January 9, 2005. Plaintiff alternatively argues that the Court should equitably toll the applicable statutes of limitations due to Hatton's misleading letters and Corning's "other inequitable conduct." Pl.'s Opp'n Br. 3. Finally, Plaintiff argues that the motion for summary judgment should be denied because discovery is not complete.

As a preliminary matter, the Court finds that no additional discovery is warranted. First, Plaintiff has failed to provide the required supporting affidavit or declaration stating the "specified reasons" why it "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also Radich v. Goode*, 886, F.2d 1391, 1393-94 (3d Cir. 1989) (stating that the requesting party must explain "what material facts it hopes to uncover and why it has not previously discovered the information."). Additionally, as explained below, the clear documentary evidence shows that Plaintiff's claims are untimely, rendering further discovery irrelevant. The Court also finds that each claim had accrued as of January 5, 2005, and that equitable tolling does not apply. The Court will thus grant Corning's motion.

### i. Breach of Contract

In Count 8 of the Amended Complaint, Plaintiff asserts a claim for breach of contract against Corning. The Court previously determined that New Jersey law applies to the breach of contract claim. *Demodulation, Inc.*, 2012 WL 6204172, at *8 n.7. New Jersey law provides a six-year statute of limitations for contract claims. N.J. Stat. Ann. § 2A:14-1. The clock begins to tick on the date that the cause of action accrues. *Id.* Under New Jersey law, a cause of action arising from a breach of contract generally accrues when the defendant breached the contract. *Peck v. Donovan*, No. 12-1213, 2012 WL 6131055, at *4 (3d Cir. Dec. 11, 2012) (citing *Sodora v. Sodora*, 768 A.2d 840, 842 (N.J. Super. Ct. Ch. Div. 2000).

In certain circumstances, the discovery rule will delay accrual "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Id.* at *4 (quoting *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973). The discovery rule thus "imposes on plaintiffs an affirmative duty to use reasonable diligence to investigate a potential cause of action, and thus bars from recovery plaintiffs who had 'reason to know' of their injuries." *County of Morris v. Fauver*, 707 A.2d 958, 972 (N.J. 1998). Because most contract actions rely upon the principal that the parties to the agreement know the terms of their contract and can detect a breach with reasonable diligence, the discovery rule generally does not apply to contract actions. *Id.*

Here, the undisputed facts demonstrate that the alleged breaches occurred prior to January 9, 2005, and thus more than six years before Plaintiff filed the instant action. O'Keefe's January 9, 2005 letter references the same conduct alleged in the Amended Complaint, which is that Corning disclosed Plaintiff's information to third parties and engaged in development efforts with foreign entities in violation of the NDA. *See* Walsh Decl. Ex. D (referencing Corning's alleged "disclosure of information related to Demodulation LLC to third parties, as well as on-going development efforts related to glass-coated metal wires involving relations with foreign entities"). Dr. King's 2004 notes referencing Corning's alleged disclosures and development efforts, and O'Keefe's January 24, 2005 "for [Corning's] clarification" confirm that the alleged conduct occurred prior to the date of O'Keefe's first letter. Plaintiff argues that it uncovered evidence of an additional breach through discovery, citing a document showing that Corning had an RFID discussion with Texas Instruments. *See* Light Decl. Ex. B. However, the document memorializing that meeting is dated May 13, 2004, which is more than six years prior to the filing date. *Id.* Plaintiff's numerous timelines regarding its investigation of Corning confirm that the alleged wrongdoing occurred prior to January 9, 2005. *See* Supp. Walsh Decl. Ex. B, C.

The Court further finds that the discovery rule does not apply to Plaintiff's breach of contract claim. *See id.* Moreover, even if it did apply, Plaintiff's January 9, 2005 letter demonstrates that it was aware of its claim more than six years before filing suit on

January 18, 2011. As noted above, that letter complains of the exact conduct that forms the basis for this claim. Walsh. Decl. Ex. D. In fact, Dr. King's notes indicate that Plaintiff was aware of its potential claim as early as October 8, 2004. *See* Singh Decl. Ex A. Plaintiff's timelines also support the Court's finding that Plaintiff had knowledge of its claim more than six years before filing this action.

Plaintiff's argument that the January 9, 2005 letter is not sufficiently specific to show that it was on notice of its claim is unavailing. A plaintiff need not be aware of every fact supporting potential liability for the limitations period to begin to run, but only the possibility of a claim. *See Savage v. Old Bridge Sayreville Medical Grp., P.A.*, 134 N.J. 241, 248 (1993). A plaintiff is on notice of a claim when it is aware that it has been injured and of the potential source of its injury. *See Blystra v. Fiber Tech. Group, Inc.*, 407 F. Supp. 2d 636, 642-43 (D.N.J. 2005); *Savage*, 134 N.J. at 248. And O'Keefe's self-serving affidavit stating that he was unaware that Corning had breached NDA does not suffice to create a genuine issue of material fact regarding Plaintiff's awareness of its claim, given Corning's well-supported showing to the contrary. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (stating that "a bare but sworn assertion of a claimant's lack of knowledge will not suffice to create a material dispute of fact where that assertion is impeached by a well-supported showing to the contrary"). Accordingly, the discovery rule would not save Plaintiff's time-barred claim. The Court will thus grant summary judgment to Corning on Plaintiff's breach of contract claim.

### ii. Misappropriation of Trade Secrets

In Count 10 of the Amended Complaint, Plaintiff asserts a claim for misappropriation of trade secrets against all Defendants. The Court previously determined that New York law governs Plaintiff's misappropriation of trade secrets claim. Under New York law, a three-year statute of limitations applies to misappropriation claims. *Andrew Greenberg, Inc. v. Svane, Inc.*, 36 A.D.3d 1094, 1098 (3d Dep't 2007); *Demas v. Levitsky*, 291 A.D.2d 653, 658 (3d Dep't 2002). The accrual date depends on the nature of the misappropriation alleged. *Flight Sciences, Inc. v. Cathay Pac. Airways Ltd.*, 647 F. Supp. 2d 285, 288 (S.D.N.Y. 2009). Where a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure. *Id.* Conversely, if the defendant keeps the secret confidential, yet makes use of it to his own commercial advantage, each successive use constitutes a new, actionable tort for the purpose of determining the statute of limitations. *Id.* Here, Plaintiff alleges that Corning disclosed its trade secrets to third parties prior to January 2005. Because more than three years passed between the alleged disclosure and the filing date, Plaintiff's misappropriation of trade secrets claim is untimely. The Court will thus grant Corning's summary judgment motion on that claim.

### iii. Unfair Competition

In Count 11 of the Amended Complaint, Plaintiff asserts a claim for unfair competition and tortious interference with prospective business relations against Corning. The Court must first determine whether New York or New Jersey law applies to this claim. Defendants argue that New York law applies. Plaintiff does not address the issue. Under the first step of New Jersey's two-step "most significant relationship" test, the Court finds that an actual conflict exists between New York and New Jersey law. *See P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008). New York has a three-year statute of limitations for tortious inference with prospective business relations claims arising from an injury to property, while in New Jersey the statute of limitations would be six years. *See Blystra*, 407 F. Supp. 2d at 645; *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 280 F. Supp. 2d 244, 254 (S.D.N.Y. 2003). Under the second step, the Court finds that New York has the most significant relationship to the claim. Defendants and the CCIC are all located in New York, and all of the alleged conduct took place in New York. The Court will thus apply the three-year statute of limitations under New York law to this claim. The limitations period for tortious interference claims begins to run on the date that the alleged injury takes place. *See Mario Valente Collezioni, Ltd.*, 280 F. Supp. 2d at 254.

The crux of Plaintiff's unfair competition and tortious interference with prospective business relations claim is that Corning "took actions or conspired to take actions to prevent DEMOD from doing business with or getting grants or loans from third parties." FAC ¶ 127. Specifically, Plaintiff alleges that Corning made derogatory statements about its technology at a meeting with various New York government officials, and that Corning told third parties that Plaintiff did not actually own the microwire technology at issue and minimized the importance of that technology. FAC ¶¶ 30-33. O'Keefe asserted these same allegations in his January 9, 2005 and January 24, 2005 letters. O'Keefe's letters thus show that the conduct forming the basis for the unfair competition claim occurred on or before January 9, 2005, and that Plaintiff's unfair competition had accrued at least as of that date. Accordingly, the applicable three-year statute of limitations under New York law had long run when Plaintiff brought suit in 2011.

### iv. Equitable Tolling

Plaintiff argues that the Court should toll the statute of limitations because Corning made misrepresentations regarding Plaintiff's potential claims when responding to O'Keefe's January 2005 letters. Plaintiff argues that Corning's misrepresentations caused it to miss the filing deadlines. The Court disagrees, and finds that equitable tolling does not apply to Plaintiff's claims.

A court may use equitable tolling to delay a statute of limitations from running where "the defendant has actively mislead the plaintiff respecting the plaintiff's cause of action." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). Under either New York or New Jersey law, equitable tolling applies only if the plaintiff can show that the defendant's conduct reasonably prevented it from filing a

10

timely complaint. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (holding that under New York law, equitable tolling does not apply even if plaintiff was subject to "fraud, misrepresentations, or deception" if these circumstances did not prevent it from filing a timely complaint); *Blystra*, 407 F. Supp. 2d at 645 (declining to apply equitable tolling under New Jersey law where plaintiff was on notice of his claims); *Doe v. Holy See*, 17 A.D.3d 793, 796, 793 N.Y.S.2d 565, 569 (2005) (stating that for equitable tolling to apply, the plaintiff must show that it commenced its action in a "reasonably timely fashion"). Equitable tolling will not apply unless the alleged concealment deprived the plaintiff of information needed to put it on notice of its claims. *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591-92 (3d Cir. 2005); *Paige v. Police Dep't*, 264 F.3d 197, 199-200 (2d Cir. 2001).

O'Keefe's January 9, 2005 letter demonstrates that Plaintiff was on notice of its breach of contract, misappropriation of trade secrets, and unfair competition claims at the latest as of that date. O'Keefe's follow-up letter "for [Corning's] clarification" on January 24, 2005, Dr. King's handwritten notes, and Plaintiff's timelines further support that finding. Accordingly, the Court sees no basis for tolling the statute of limitations. *See Oshiver*, 38 F.3d at 1389. "The same undisputed evidence that put [Plaintiff] on inquiry notice of [its] injuries precludes tolling on fraudulent concealment grounds." *Blystra*, 407 F. Supp. 2d at 643.

Moreover, no reasonable jury could find that Corning's alleged misrepresentations prevented Plaintiff from filing a timely complaint. Equitable tolling applies only where the failure to timely commence the lawsuit is not attributable to a lack of diligence on the plaintiff's part. *Kotlyarsky v. New York Post*, 757 N.Y.S.2d 703, 707-08 (N.Y. Sup. Ct. 2003). "A plaintiff who unreasonably relies on the reassurances of a wrongdoer has not satisfied the obligation of due diligence. *Id.*; *see also Freeman v. State*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002) ("Equitable tolling . . . does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims."). Given that the undisputed facts show that Plaintiff was on notice of its claims, any reliance on Corning's reassurances was unreasonable. Furthermore, no reasonable jury could find that Plaintiff relied on Corning's statements. Instead, Plaintiff continued its investigation of Corning, and then inexplicably waited over six years to file its Complaint. *See e.g.*, Singh Decl. Ex. D (containing Dr. King's handwritten notes, dated February 22, 2005, April 25, 2006, March 30, 2007, and January 24, 2008, memorializing numerous concerns about Corning); Supp. Walsh. Decl. Ex E (providing a June 19, 2006, letter from O'Keefe to Attorney General Eliot Spitzer, asserting O'Keefe's belief that Corning "deliberately used its influence and economic power to insure the failure of Demodulation" and recounting numerous acts of alleged "defamation, interference and slander"). O'Keefe's self-serving declaration that "he accepted Mr. Hatton's representation that there had been no breaches or other wrongdoing by Corning," will not suffice to avoid summary judgment given the overwhelming documentary evidence to the contrary. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). The

11

Court will decline to toll the statute of limitations in this case, and will grant Corning's motion for summary judgment on the grounds that the three remaining claims against it are time-barred.

### III. MOTION FOR LEAVE TO AMEND

In response to Corning's motion for summary judgment, Plaintiff filed a cross-motion seeking leave to file a Second Amended Complaint. The Court's Rule 16 Pretrial Scheduling Order stated that "[a]ny motion to amend pleadings must be returnable not later than July 1, 2013." Order ¶ 14, ECF No. 108. Plaintiff filed a cross-motion to amend on September 24, 2013. ECF No. 140. Federal Rule of Civil Procedure 16(b)(4) provides that "[a Scheduling Order] may be modified only for good cause and with the judge's consent." Plaintiff never references Rule 16, but seems to argue that it has good cause to amend because it uncovered new and relevant facts through discovery after the July 1, 2013 deadline. The Court finds that this constitutes good cause, and will proceed to evaluate the proposed amendment under Federal Rule of Civil Procedure 15.

Under Rule 15, leave to amend may be denied on the basis of "undue delay, bad faith, and futility," or where permitting amendment would unduly prejudice the non-moving party. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Whether to allow a plaintiff to file an amended complaint is subject to the sound discretion of the court. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332-33 (3d Cir. 2002). An amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997). In assessing "futility," a court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*,

542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Id.*

### B. Discussion

The proposed Second Amended Complaint asserts thirteen causes of action:

(1) Count 1 – NJ Civil RICO (NJSA 2C:41-2(c)) against all Defendants;
(2) Count 2 – NJ RICO Conspiracy (NJSA 2C:41-2(d)) against all Defendants;
(3) Count 3 – Federal Civil RICO against Corning and the University;
(4) Count 4 – Breach of Contract against the University;
(5) Count 5 – Piercing the Corporate Veil against Corning and the University;
(6) Count 6 – Breach of Contract against ATRI;
(7) Count 7 – Breach of Contract against Corning;
(8) Count 8 – Misappropriation of Trade Secrets against all Defendants;
(9) Count 9 – Unfair Competition against all Defendants;
(10) Count 10 – NY General Business Law Violations against ATRI;
(11) Count 11 – Fraud against all Defendants;
(12) Count 12 – Breach of Fiduciary Duty against ATRI; and
(13) Count 13[1]  – Breach of Implied Contract against ATRI.

The Court will partially grant and partially deny Plaintiff's cross-motion to amend.[2]  The Court will permit Plaintiff to include Counts 1, 2, 3, 4, 5, 6, and 11 in its Second Amended Complaint.  The Court finds that Plaintiff has cured the defects in those claims described in the Court's prior decision, and thus has sufficiently alleged each of those claims.  *See Demodulation, Inc.*, 2012 WL 6204172.  As discussed above, Counts 7, 8, and 9 (which correspond with Counts 8, 10, and 11 of the Amended Complaint) are time-barred as to Corning, and thus futile.  The Court will not permit Plaintiff to plead those claims against Corning.  Plaintiff, however, may file Counts 8 and 9 against the University and ATRI.  Additionally, as explained below, Counts 10 and 12 are futile, because they fail to state claims under Rule 12(b)(6).  Accordingly, Plaintiff may not include those claims in its Second Amended Complaint.  Finally, as discussed below, the Court finds that Plaintiff may include Count 13, which is a new claim asserting breach of implied contract against ATRI, in the Second Amended Complaint.

---

[1] Incorrectly labeled Count 18.
[2] In response to the motion to amend, Corning argues that all claims against it are time-barred by the applicable statutes of limitations.  The Court is unable to make the necessary statute of limitations determinations based solely on the Second Amended Complaint.  *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)").  Corning may re-raise its statute of limitations arguments later in the litigation.

### i. Count 10 – NY General Business Law Violations against ATRI

In Count 10, Plaintiff asserts a claim for violations of New York General Business Law §§ 349 and 350 against ATRI. The Court finds that this claim is futile.

To make out a prima facie case under Section 349, a plaintiff must demonstrate that: 1) the defendant's deceptive acts were directed at consumers, 2) the acts are misleading in a material way, and 3) the plaintiff has been injured as a result. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). To show consumer-oriented conduct, Plaintiff must "demonstrate that the acts or practices [complained of] have a broader impact on consumers at large. Private contract disputes, unique to the parties . . . would not fall within the ambit of the statute." *Id.* Courts apply the same standards to Section 350. *See Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1291-92 (S.D.N.Y.1988) (denying recovery under Section 350 where plaintiff was not an injured consumer and did not allege injury to public at large).

In this case, Plaintiff alleges that ATRI falsely listed Plaintiff as a graduate of the CCIC and failed to provide Plaintiff with the business incubation services that it advertised. Thus, these deceptive acts were directed at Plaintiff, and not at any set of consumers. *See Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (dismissing claim because "dispute [was] fairly characterized as private"). Plaintiff's attempt to save its claim with allegations that "the public at large has been injured" because Corning used "state and federal tax revenue" for its own benefit misses the point. Second Amended Complaint ("SAC") ¶ 116, ECF No. 141-5. Plaintiff still fails to allege a broad impact on *consumers* at large.

Accordingly, the Court will **DENY** the motion to amend as to the Plaintiff's claims under New York General Business Law §§ 349 and 350.

### ii. Count 12 – Breach of Fiduciary Duty against ATRI

In Count 12, Plaintiff asserts a claim for breach of fiduciary duty against ATRI. The Court finds that this claim is futile. A fiduciary is bound by a standard of utmost good faith, fairness, and loyalty. *See Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1078 (2d Cir. 1977). To state a claim for breach of fiduciary duty, a plaintiff must show that there is a "special relationship" between the parties that gives rise to this heightened duty. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1231 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992). Plaintiff again fails to allege anything more than a business relationship: Plaintiff alleges that ATRI advertised its business incubation services, and Plaintiff sought to take advantage of those services. Offering business services does not give rise to a heightened duty. Accordingly, the Court will **DENY** the motion to amend as to Plaintiff's breach of fiduciary duty claim.

### iii. Count 13 – Breach of Implied Contract against ATRI

In Count 13, Plaintiff for the first time asserts a claim for breach of contract implied-in-fact against ATRI. The elements of an implied-in-fact contract are the same as the elements of an express contract: "consideration, mutual assent, legal capacity, and legal subject matter." *Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999). The parties' conduct may manifest assent, and "a promise may be implied when a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it." *Id.* Here, Plaintiff alleges that it entered into an implied contract with ATRI, under which Plaintiff agreed to become a tenant at CCIC, allowing ATRI to fulfill its charter obligation to incubate ceramics companies. SAC ¶ 127. In return, ATRI agreed to provide Plaintiff with business incubation services. *Id.* Plaintiff alleges that it moved into CCIC as a result of this implied agreement, and was damaged when ATRI did not provide it with the promised services. *See id.* ¶¶ 94, 98, 128. These allegations are sufficient to state a claim under Rule 12(b)(6), and the Court will **GRANT** Plaintiff's motion to amend as to the breach of implied contract claim.

## IV. CONCLUSION

For the reasons stated above, Corning's motion for summary judgment is **GRANTED**. Counts 8, 10, and 11 of the Amended Complaint as against Corning are **DISMISSED WITH PREJUDICE**.

Plaintiff's cross-motion to amend is partially **GRANTED** and partially **DENIED**. Plaintiff may file Counts 1, 2, 3, 4, 5, 6, 8 (against the University and ATRI), 9 (against the University and ATRI), 11, and 13 of the proposed Second Amended Complaint. An appropriate order follows.

                                                  /s/ William J. Martini  
                                                  **WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 11, 2014**